

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2003

# Boone v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket No. 02-3256

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Boone v. Comm Social Security" (2003). *2003 Decisions.* Paper 7.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/7

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3256

SARAH M. BOONE,

Appellant

v.

*JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY

*(Pursuant to F.R.A.P. 43(c))

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-04231)
District Judge: Honorable Herbert J. Hutton

Argued March 13, 2003

Before: BECKER,* RENDELL, and AMBRO, *Circuit Judges*

(Opinion filed December 18, 2003)

> Peter J. Pinnola, Esquire (Argued)
> Pinnola & Bomstein
> 8039 Old York Road
> Elkins Park, PA 19027
>
> *Attorney for Appellant*

---

* Judge Becker concluded his term as Chief Judge on May 4, 2003.

James A. Winn
  Regional Chief Counsel
Lori Karimoto (Argued)
  Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
OGC/Region III
P.O. Box 41777
Philadelphia, PA 19101

Patrick L. Meehan
  United States Attorney
Joan Garner
  Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

*Attorneys for Appellee*

## OPINION OF THE COURT

AMBRO, *Circuit Judge*:

Sarah M. Boone challenges the Social Security Commissioner's determination that she is not disabled and therefore not entitled to Supplemental Security Income ("SSI") disability benefits. She makes several arguments, each of which pertains to the Administrative Law Judge's ("ALJ") determination that she can perform work that exists in significant numbers in the regional or national economy.[1] We agree with Boone that the record lacks substantial evidence that she can perform such work and, thus, is not disabled. We therefore reverse and remand.

## BACKGROUND

Boone applied in November 1998 for SSI disability benefits under Title XVI of the Social Security Act, alleging

---

1. The ALJ's opinion became the final decision of the Commissioner because the Appeals Council declined to review it.

disability due to back and leg disorders, carpal tunnel syndrome, and high blood pressure. To show disability for purposes of SSI, a claimant must demonstrate that she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). The ALJ found that Boone suffers from severe impairments but, as noted above, that she is not disabled because there are a significant number of jobs in the national economy that she can perform.

Boone was fifty-three years old at the alleged onset date of her disability in November 1998. She has an eleventh grade education and, although she has not worked since 1986, has past experience as an office cleaner as well as a meat weigher and wrapper.

After she was involved in a bus accident in the 1980s, Boone underwent back surgery. She has sought assistance from pain specialists since that time. The ALJ found that she has a continuing back disorder caused by degenerative disc disease, spinal stenosis, a disc bulge, and left leg radiculopathy, and that she suffers from carpal tunnel syndrome and right knee pain.[2] The ALJ therefore concluded that Boone is severely impaired.

Looking to the effect of Boone's impairments, the ALJ found that she cannot perform her past work as an office cleaner or meat weigher and wrapper, but that she does retain the capacity to perform "a range of light level work."[3] In particular, she can stand, walk, and sit for six hours out of an eight-hour day. Any employment must, however, permit her to sit and stand at will every thirty minutes. She can lift and carry twenty pounds occasionally and ten

2. Because, as discussed below, the ALJ correctly evaluated Boone's medical impairments and resulting limitations, we rely upon his findings and do not describe the various medical reports and other evidence supporting them. We also note that Boone does not challenge the ALJ's finding that her blood pressure is well-controlled with medicine and so does not impair her ability to work.

3. Social Security regulations classify jobs in one of five categories depending on the physical exertion they require: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 416.967.

pounds frequently. She has no limitations in pushing or pulling, but must not be required to perform repetitive hand activity. Only occasionally can she climb, balance, kneel, stoop, crouch, or crawl.

On the basis of the physical limitations identified by the ALJ and considering Boone's age, education, and unskilled work history, a vocational expert ("VE") testified that Boone has the ability to work as an inventory clerk, a home health aide, or a sales counter clerk. According to the VE, there are 2,600 inventory clerk jobs in the regional economy and 127,000 such jobs in the national economy; there are 5,800 home health aide jobs regionally and 322,000 nationally; and 1,500 sales counter clerk jobs exist regionally and 95,000 nationally. The ALJ concluded that these occupations represent a significant number of jobs existing in the national economy and, accordingly, that Boone is not disabled.

After the Appeals Council denied her request for review, Boone timely appealed to the United States District Court for the Eastern District of Pennsylvania. The parties filed cross-motions for summary judgment. A magistrate judge recommended granting the Commissioner's motion for summary judgment, which the Court did on June 17, 2002. Boone timely appealed to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

## DISCUSSION

We review *de novo* the District Court's grant of summary judgment in favor of the Commissioner but may reverse only if "the ALJ's findings were not supported by 'substantial evidence.'" *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is less than a preponderance but more than a scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate." *Id.*

A five-step process is used to determine disability for SSI benefits eligibility, *see* 20 C.F.R. § 416.920, but in this case only step five is in dispute.[4] At the fifth step, the

---

4. At the first step, the claimant will be found not disabled if she is currently engaging in "substantial gainful activity." 20 C.F.R.

Commissioner bears the burden of proving that, considering the claimant's residual functional capacity,[5] age, education, and past work experience, she can perform work that exists in significant numbers in the regional or national economy. 42 U.S.C. § 423(d)(2)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).

## A. Vocational Expert Testimony

At the fifth step of the evaluation process, "the ALJ often seeks advisory testimony from a vocational expert. In addition, the ALJ will generally consult the *Dictionary of Occupational Titles* ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns*, 312 F.3d at 119; *see also id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). Boone argues for reversal of the ALJ's non-disability determination on the grounds that the VE's testimony that Boone can work as an inventory clerk, a home health aide, and a sales counter clerk conflicts with the DOT and that neither the VE nor the ALJ addressed the conflict. While we do not adopt a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal, we do conclude that the VE's testimony in this case is not substantial evidence.[6]

§ 416.920(a). At step two, the claimant must demonstrate that she suffers from a "severe medically determinable physical or mental impairment," or she will be found not disabled. *Id.* If the claimant can show at the third step that her impairments meet or equal an impairment listed in Appendix 1 to Subpart P of Part 404, she will be found *per se* disabled. *Id.* Step four requires the claimant to show that she cannot perform her past work. *Id.*

5. A claimant's "residual functional capacity" is what she can do despite the limitations caused by her impairments. *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

6. As we discuss below, Social Security Ruling 00-4p addresses how a conflict between VE testimony and the DOT should be resolved. The ALJ in this case issued his decision prior to the enactment of SSR 00-4p. Our opinion on this issue is thus limited to those situations.

In response to the ALJ's hypothetical question as to the availability of jobs for an individual with Boone's residual functional capacity, age, and experience, the VE testified:

> There would be some jobs that this individual could perform given the limitations that have been outlined in the hypothetical, and I'm going to have to think about this a bit. But I think that I would look at the following positions: The first job that I, I would identify as appropriate would be an inventory clerk. I'd be glad to give any of those definitions through explanations of these jobs. There's very little, if any, use — I mean there's very little use of the hands, and it's certainly not provide [sic] bimanual repetitive activities. And they're in a region, there's about 2,600 of those jobs. In the nation, there's 127,000. The job that I, that I was — I'm thinking about, but I think still would be appropriate and this is what I'm hesitating about, would be a home health aid [sic] at the light exertional level. It would be 5,800 of those jobs in the region and 322,000 nationally. A third job that I would look at as a possibility would be — I'm kind of going over in my mind the number of positions, but I want to make sure they kind of fit. What I'm looking for, I think[, is] an unskilled, sales counter clerk, which there are about 1,500 in the region and 95,000 nationally.

We consider first the three occupations identified by the VE as suitable for Boone. The DOT classifies the occupation "inventory clerk" in the medium exertional level with a "specific vocational preparation" ("SVP") of 4.[7] DOT § 222.387-026. Occupations with an SVP of 3 or 4 are

---

7. The DOT states that an inventory clerk does the following: "Compiles and maintains records of quantity, type, and value of material, equipment, merchandise, or supplies stocked in establishment: Counts material, [etc.] . . . in stock and posts total to inventory records, manually or using computer. Compares inventories to office records or computes figures from records, such as sales orders, production records, or purchase invoices to obtain current inventory. Verifies clerical computations against physical count of stock and adjusts errors in computation or count, or investigates and reports reasons for discrepancies. Compiles information on receipt or disbursement of material, [etc.] . . . , and computes inventory balance, price, and cost. Prepares reports, such as inventory balance, price lists, and shortages. Prepares list of depleted items and recommends survey of defective or unusable items. May operate office machines, such as typewriter or calculator. May stock and issue materials or merchandise." DOT § 222.387-026.

semi-skilled. Because the ALJ found that Boone can do only a limited range of light, unskilled work — not medium[8] or semi-skilled work — she cannot perform the job of inventory clerk as it is described in the DOT.

Likewise, the DOT describes a home health aide job as falling in the medium exertional level and with an SVP of 3.[9] DOT 354.377-014. The VE specified that Boone could work as "a home health aid[e] at the light exertional level." On cross-examination, Boone's counsel asked the VE about the extent of lifting required of a home health aide. She replied:

> One of the things that I'd think you have to look at when you talk about a home health aid[e] is, is that there are various levels of, of care needed that are provided to the elderly or the disabled. Some people need a lot of physical care and need to be able to transfer it, need to be . . . able to do heavy lifting. There are some people that for instance, that might have slight problems and just need help with their — a little bit of help with their ADL to act as a companion. And that — at that exertional level, it's fairly light . . . .

---

8. The ALJ found that Boone can lift and carry twenty pounds occasionally and ten pounds frequently. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

9. The DOT states that a home health aide "[c]ares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self. Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients." DOT 354.377-014.

Although the VE did recognize that Boone cannot perform all home health aide jobs, it is unclear whether the numbers that the VE had earlier provided (5,800 regionally and 322,000 nationally) included the medium exertional level jobs in the home health aide occupation. We also lack any basis to conclude that the VE discounted the semi-skilled jobs, which Boone cannot perform, from the number of jobs identified.

Finally, although the DOT does not include an entry for "sales counter clerk," it does list "sales clerk" and "sales attendant" positions. A sales clerk has an SVP of 3, a semi-skilled occupation and therefore inappropriate for Boone. DOT § 290.477-014. Although sales attendant is an unskilled occupation with a light exertional level, according to the companion volume to the DOT (*Special Characteristics of Occupations*), the job involves frequent reaching, handling, and fingering, which Boone's limitation on repetitive hand activities may preclude. Moreover, the sales attendant position would not seem to accommodate Boone's need to be able to sit or stand at will, but instead likely requires standing or walking throughout the shift.[10] *Id.*

Thus, according to the DOT, Boone cannot perform any of the occupations identified by the VE. Neither the VE nor the ALJ in his opinion acknowledged the conflict between the VE's testimony and the DOT or explained why the VE's testimony should be relied on despite the conflict.[11]

10. The DOT states that a sales attendant "[p]erforms any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock." DOT § 299.677-010.

11. On cross-examination before the ALJ, Boone's attorney asked the VE if she had "the DOT numbers" for the jobs she identified, to which she replied: "No, but I'd be glad to get them for you, that's not a problem." Boone's counsel did not follow up on the issue, and the Commissioner

In *Burns*, 312 F.3d 113, we addressed the import of an unexplained conflict between VE testimony and the DOT. We recognized that there is a split among circuit courts, with several holding that "an ALJ may base his conclusions on a vocational expert's testimony that conflicts with the DOT,"[12] *id.* at 127 n.8, one requiring the ALJ always to "prefer the DOT over the testimony of a vocational expert,"[13] *id.*, and others adopting a "middle view" in which the ALJ must "explain any decision to prefer the testimony of a vocational expert over the DOT."[14] *Id.* We did not, however,

---

therefore asserts that we should ignore the conflict and lack of reconciling explanation. Boone's question to the VE, however, sufficiently raised the issue before the ALJ for purposes of our review. Moreover, the ALJ had a duty to follow up on Boone's inquiry to ensure a complete record. *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (ALJ has a "duty to develop a full and fair record"); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (similar statement); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (similar statement).

12. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999); *Connecticut v. Sec'y of Heath & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995). The Fifth Circuit requires that "the record reflect[ ] an adequate basis" for preferring the VE's testimony to the DOT. *Carey*, 230 F.3d at 146.

13. *See Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1999). *Burns* noted, however, that the Eighth Circuit "seems to have quickly retreated from that bright-line rule." *Burns*, 312 F.3d at 127 n.8 (citing *Montgomery v. Chater*, 69 F.3d 273 (8th Cir. 1995)).

14. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984).

We further noted that Social Security Ruling SSR 00-4p "squarely addresses how this situation should be handled." *Burns*, 312 F.3d at 127. The Ruling adopts the middle ground and further puts the burden on the ALJ to uncover the existence of any conflicts between the VE's testimony and the DOT:

> Social Security Ruling 00-4p requires that the ALJ ask the vocational expert whether any possible conflict exists between the

need to choose among the various alternative options to resolve a conflict between VE testimony and the DOT because we remanded on other grounds. *Id.* at 127.[15] Although the individualized analysis that the middle course represents seems to be the most sensible of the options, we again do not hold that the failure of an ALJ (prior to the enactment of SSR 00-4p) to discover and explain a conflict *necessarily* requires reversal.

We are further troubled, however, by the hesitation with which the VE identified the three possible occupations for Boone. *See Sias v. Sec'y of Heath & Human Servs.*, 861 F.2d 475 (6th Cir. 1988) ("[I]f the expert is unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his opinion."); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (interpreting an earlier Sixth Circuit case as holding in favor of the claimant because of "the failure of the vocational expert to testify without qualification that jobs which the plaintiff could perform actually existed in the economy.") (citing *Graves v. Sec'y of Health, Educ., & Welfare*, 473 F.2d 807, 809 (6th Cir. 1973)). Here, the VE testified:

> There would be some jobs that this individual could perform given the limitations that have been outlined

vocational expert's testimony and the DOT, and that, if the testimony does appear to conflict with the DOT, to 'elicit a reasonable explanation for the apparent conflict.' The Ruling requires that the explanation be made on the record and that the ALJ explain in his decision how the conflict was resolved.

*Id.*

SSR 00-4p sets requirements for an ALJ to follow in any case decided after its enactment. Here, as already noted, the hearing occurred and the ALJ rendered his decision before the enactment of SSR 00-4p.

15. Although we so stated, we nonetheless seemed to adopt the middle course: "Burns argues that the vocational expert's testimony that he could work as a laundry sorter, packer, or ticket taker, adopted by the ALJ for his findings of fact, was inconsistent with the DOT in several respects, and that any inconsistencies should have been explained by the vocational expert as well as by the ALJ in his decision. We agree." *Id.* at 126.

in the hypothetical, and *I'm going to have to think about this a bit.* But *I think* that I would look at the following positions . . . .

(Emphases added.) Discussing the home health aide occupation, the VE stated:

The job that I, that I was — I'm thinking about, but I think still would be appropriate and *this is what I'm hesitating about*, would be a home health aid [sic] at the light exertional level.

(Emphasis added.) And regarding the sales counter clerk, she said:

A third job that *I would look at as a possibility* would be — I'm kind of going over in my mind the number of positions, but I want to make sure they kind of fit. What I'm looking for, I think an unskilled, sales counter clerk, which there are about 1,500 in the region and 95,000 nationally.

(Emphasis added.)

Given this hesitation, the conflict between the VE's testimony and the DOT — which worked to Boone's disadvantage — as to each occupation identified by the VE, and the failure of the VE and the ALJ to acknowledge (much less explain) the conflict, we conclude that the VE's testimony does not by itself provide substantial evidence of a significant number of jobs in the economy that Boone can perform. We must consider, however, whether the record otherwise contains such evidence.

## B. "Erosion of the Occupational Base"

There is no dispute that, because of her age, limited education, and unskilled work experience, Boone is disabled if she has the physical ability to do only sedentary work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(g) ("Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals . . . can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."). The parties also agree that Boone is not disabled

if she can perform the full range of light work. *See id.* § 202.00. Her residual functional capacity does not, however, fall neatly into either category. Rather, as noted above, the ALJ found that Boone can do a limited range of light work.

Boone asserts that the ALJ committed *per se* reversible error by failing to specify how limited the range of light work that she can perform is and by not addressing whether she is also limited in the range of sedentary work that she can do. Social Security Ruling 83-12 directs that if the claimant's residual functional capacity does not coincide with any of the established categories, the ALJ "will consider the extent of any erosion of the occupational base and assess its significance." *Id.*[16] Thus, Boone's argument, in the language of SSR 83-12, is that the ALJ should have assessed the "extent" of the "erosion of the occupational base" for both the sedentary and light work that she can perform.

SSR 83-12 further states, however, that where "difficult judgments are involved" in the categorization of a claimant's work ability, VE "assistance is advisable." *Id.* The Ruling so advises because a VE can provide a more individualized analysis as to what jobs the claimant can and cannot perform than does a determination of the claimant's remaining occupational base. *Id.*[17] Consequently, we shall not interpret SSR 83-12 to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform. At the same time, however, the absence of those findings means that we are hindered in considering whether substantial evidence supports the ALJ's ultimate determination that Boone is not disabled.

---

16. The Ruling is binding on the agency. *See* 20 C.F.R. § 402.35(b)(1).

17. *See also, e.g.*, 20 C.F.R. § 416.966(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, [the ALJ] may use the services of a vocational expert or other specialist.").

The Commissioner contends, however, that, because the ALJ found that Boone can do a limited range of light work, she can perform the 200 unskilled sedentary occupations, *see* 20 C.F.R. pt. 404, subpt. P., app. 2, § 202.00(a), and the approximately 1,400 unskilled light level occupations, *see id.* § 201.00(a), that exist in the national economy.

We cannot agree. SSR 83-12 makes clear that if a person "must alternate periods of sitting and standing," as Boone must have the option to do, she "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." *Id.* Thus, the requirement, found by the ALJ, that Boone's employment allow her the option to sit or stand at will every thirty minutes precludes her from performing "the prolonged sitting contemplated in the definition of sedentary work" as well as "most light work." *Id.* Moreover, "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *Id.* ("There are some jobs in the national economy — typically professional and managerial ones — in which a person can sit or stand with a degree of choice."). The sedentary and light jobs that Boone physically can perform are, therefore, likely to require a higher degree of skill than she is capable of. *Id.*; *see also* 20 C.F.R. § 416.963(d) ("If [the claimant is] closely approaching advanced age (age 50-54), [the Commissioner] will consider that [her] age along with a severe impairment(s) and limited work experience may seriously affect [her] ability to adjust to other work."). Moreover, Boone's inability to perform repetitive hand movements will further limit the number of unskilled sedentary jobs she can perform. *See* SSR 83-14 ("[B]ilateral manual dexterity is necessary for the performance of substantially all unskilled sedentary occupations.").

Given that SSR 83-12 suggests that Boone cannot perform most sedentary or light jobs (because of her need to have the option to sit or stand at will and her ability to perform only unskilled work), we cannot — as the Commissioner would have us do — assume that the ALJ's finding that Boone can perform a limited range of light

work means that she can perform a significant number of jobs in the economy. Substantial evidence therefore does not support the ALJ's conclusion that the Commissioner met her burden of proof.

## CONCLUSION

The VE's testimony does not constitute substantial evidence that Boone can perform a significant number of jobs that exist in the economy, and the record does not otherwise contain that evidence. Substantial evidence therefore does not support the Commissioner's conclusion that Boone is not disabled and so not entitled to SSI disability benefits. Thus, we reverse the District Court's entry of summary judgment in favor the Commissioner.[18] We remand to the District Court with instructions to return the case to the Commissioner for further proceedings, which may include the taking of additional evidence.[19]

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

18. We do not reverse the District Court's denial of summary judgment to Boone.

19. Because we remand on other grounds, we do not address Boone's additional arguments that the ALJ gave insufficient weight to the opinion of her treating physician and that the ALJ erred in his evaluation of Boone's credibility.