

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2004

# Jones v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket No. 03-1661

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jones v. Comm Social Security" (2004). *2004 Decisions.* Paper 746.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/746

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1661
_____

TIE'EASE L. JONES,
                    Appellant

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY

_____

On Appeal from the United States
District Court
for the Western District of Pennsylvania
(Dist. Ct. No. 01-cv-02305)
District Judge: Honorable Alan N. Bloch

_____

Submitted Under Third Circuit LAR
34.1(a)
January 23, 2004

Before: ALITO, CHERTOFF, Circuit
Judges, and DEBEVOISE,* Senior
District Court Judge

_____

      *    Honorable   Dickinson   R.
Debevoise, Senior United States District
Judge for the District of New Jersey,
sitting by designation.

(Filed April 14 2004)

Zenford A. Mitchell
P.O. Box 99937
Pittsburgh, PA 15233

        Counsel for Appellant

Shawn C. Carver
Social Security Administration
SSA/OGC/Region III
300 Spring Garden Street
6th Floor
Philadelphia, PA 19123

        Counsel for Appellee

_____

OPINION
_____

CHERTOFF, Circuit Judge.

Tie'Ease L. Jones appeals from the District Court's judgment affirming the Commissioner of Social Security's denial of her application for disability insurance and supplemental security income benefits. Jones challenges the ALJ's determination at steps three and five of the five-step evaluation process promulgated by the Social Security Administration to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. At step three, the ALJ concluded that Jones's signs, symptoms, and laboratory findings did not meet or equal the criteria

established for a listed impairment. At step five, the ALJ concluded the Commissioner had met its burden of establishing Jones's capacity for other work, given her impairments, pain, functional restrictions, age, education, and work experience. For the reasons stated below, we will affirm the District Court's judgment.

## I.

Jones was born on September 3, 1969. She has an eleventh grade education and past work experience as a nursing assistant and telemarketer. Jones filed for disability benefits on or about September 17, 1997, alleging disability due to asthma and hives.[1] Jones's application for disability insurance benefits was denied both initially and upon reconsideration. After conducting a hearing, on January 27, 1999, the ALJ rendered a decision concluding that Jones was not entitled to benefits. On October 2, 2001, the Appeals Council denied Jones's request to review the ALJ's decision.

Subsequently, Jones sought judicial

---

[1] Jones's Brief characterizes her alleged disability more broadly: "The Appellant suffers from both exertional and non-exertional impairments which include a history of urticaria, asthma, chronic obstructive and restrictive lung disease, fibromyalgia, anxiety and depression." (Appellant Br. at 3). Even if we adopt this broader characterization for the purpose of this appeal, Jones's claim fails.

review of the adverse decision, pursuant to 42 U.S.C. § 405(g), in the United States District Court for the Western District of Pennsylvania. On January 6, 2003, the Honorable Alan N. Bloch granted the Commissioner's motion for summary judgment and denied Jones's cross-motion for summary judgment. This appeal followed.

## II.

The District Court exercised jurisdiction pursuant to 42 U.S.C. § 405(g), and appellate jurisdiction is vested in this Court under 28 U.S.C. § 1291. The role of this Court is identical to that of the District Court; we must determine whether there is substantial evidence to support the Commissioner's decision. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It is less than a preponderance of the evidence but more than a mere scintilla." Id. Overall, the substantial evidence standard is a deferential standard of review. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is disabled. See 20 C.F.R. § 404.1520; see generally Plummer, 186 F.3d at 428. In

step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a). In step two, the Commissioner determines whether the claimant is suffering from a severe impairment. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). In step three, the Commissioner evaluates whether the evidence establishes that the claimant suffers from a listed impairment. If so, the claimant is automatically eligible for benefits. If the claimant does not suffer from a listed impairment or its equivalent, however, the Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(d). In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(e). Finally, in step five the Commissioner considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and "residual functional capacity." If so, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(f). In this final step, "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428.

The issues on appeal arise from the ALJ's determinations at steps three and five.

## III.

Jones argues that the ALJ erred in step three in failing to find she was per se disabled under Listing 3.02(A). The ALJ concluded that, under step two, Jones had a severe impairment based on medical findings of chronic urticaria, asthma, chronic obstructive and restrictive lung disease, and anxiety and depression. At step three, however, the ALJ determined that after "carefully compar[ing] the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments," "the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings." Administrative Transcript ("Tr.") at 13.

Listing 3.02 provides: "Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02(A). Jones's height of 69 inches corresponds to an $FEV_1$ value of 1.45 or less. Id. In support of her claim of disability, Jones points to February 16, 1998 test results indicating $FEV_1$ values of .99, 1.04, and 1.11. Tr. at 137. This Court, however, concludes that the test results alone are insufficient to support a claim of disability; rather, there is substantial evidence to support the ALJ's conclusion that Jones did not suffer from a listed impairment.

3

The introductory note to the regulations governing listed respiratory impairments explains that an FEV value should not be analyzed in isolation from other evidence in assessing whether the claimant satisfies the criteria for the listed impairment:

> The listings in this section describe impairments resulting from respiratory disorders based on symptoms, physical signs, laboratory test abnormalities, and response to a regimen of treatment prescribed by a treating source.
>
> . . . .
>
> . . . Because th[e] symptoms [attributable to these disorders] are common to many other diseases, a thorough *medical history, physical examination, and chest x-ray or other appropriate imaging techniques are required to establish pulmonary disease*. Pulmonary function testing is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings.
>
> . . . .

> Respiratory impairments usually can be evaluated under these listings on the basis of a complete medical history, physical examination, a chest x-ray or other appropriate imaging techniques, and spirometric pulmonary function tests.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00 (emphasis added). "For a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

In this case, substantial evidence supports the ALJ's decision that Jones's impairments do not meet or equal the criteria established in Listing 3.02(A). As the District Court noted, the record includes various physician treatment notes indicating that Jones's lungs were "clear," her chest x-rays were normal, she had normal breath sounds, there was "little objective evidence of abnormality on physical examination," and that she had only "mild" bronchial asthma.[2]

---

[2] Jones's challenge to the evidence outlined by the District Court is unpersuasive. (Appellant Br. at 7-8). In essence, Jones's primary argument is that the evidence cited by the District Court merely provides isolated assessments and "does not reflect her condition over time."

4

To be sure, in <u>Burnett v. Commissioner of Social Security Administration</u> we required "the ALJ to set forth the reasons for his decision," and held that the ALJ's bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment was insufficient. 220 F.3d 112, 119-20 (3d Cir. 2000). Here, Jones does not specifically challenge the ALJ's ruling on the grounds that it fails the <u>Burnett</u> standard. Rather, Jones's only reference to <u>Burnett</u> appears in a long list of citations in support of the general proposition that "the ALJ must analyze *all the evidence in the record* and provide an adequate explanation for disregarding evidence." (Appellant Br. at 9) (emphasis in original). In any event, the ALJ's step three analysis in this case satisfies <u>Burnett</u>. <u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review. <u>See</u> <u>id.</u> at 120. In this case, the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors

_____

However, the $FEV_1$ evidence relied on by Jones is also just an isolated measurement. Moreover, even if Jones is correct that the medical evidence may not be ideal in reflecting "her condition over time," such an argument is insufficient to undermine the claim that there was substantial evidence to support the ALJ's conclusion.

in reaching the conclusion that Jones did not meet the requirements for any listing, including Listing 3.02(A). The ALJ's opinion discusses the evidence pertaining to chronic obstructive and restrictive lung disease, specifically referencing "[p]ulmonary function studies . . . consistent with moderately severe obstructive and restrictive defects," but pointing to the lack of pulmonary complications, and a finding that claimant's lungs were clear. Also, the ALJ noted that claimant's medical history showed no frequent hospitalization or emergency treatments. Tr. at 13-14.[3]

_____

[3] The ALJ's opinion explains, in pertinent part:

> The claimant is somewhat more limited by chronic obstructive and restrictive lung disease with asthma, but even so, I find that this would not preclude the performance of at least sedentary work activity . . . . Pulmonary function studies are consistent with moderately severe obstructive and restrictive defects, but the claimant has no significant pulmonary complications such as clubbing, cyanosis, or edema. In addition, she has not required frequent hospitalizations or emergency room treatments for an exacerbation of this

5

This discussion satisfies <u>Burnett</u>'s requirement that there be sufficient explanation to provide meaningful review of the step three determination.

IV.

Jones also challenges the ALJ's

---

disorder. Dr. Levine's examination in February of 1998 (Exhibit 6F) showed that the claimant's lungs were clear. The claimant requires the usual medications for control of this particular medical disorder. Dr. Hawkins, while assessing that the claimant was temporarily disabled for welfare purposes (Exhibit 10F), nonetheless concluded that the claimant's asthma was only mild in nature. The claimant also has undergone allergy tests which were entirely within normal limits in January of 1997 as noted by Dr. Levine (Exhibit 6F). I therefore will conclude that the claimant, while having a severe respiratory condition, could still perform a wide range of sedentary jobs . . . .

Tr. at 13-14.

determination at step five. She raises two criticisms: (1) the jobs identified by the vocational expert (VE) in accordance with the ALJ's hypothetical—telephone operator, personal attendant, and cashier—are jobs not generally performed at the sedentary level; and (2) the ALJ disregarded the VE's response to Jones's counsel's hypothetical.

The ALJ concluded that given Jones's capacity to perform some sedentary work,[4] there are a significant number of jobs in the national economy that she could perform, providing the examples of cashier, personal attendant, and telephone operator. Jones argues that the identified jobs are generally not performed at the sedentary level. While Jones correctly notes that the Dictionary of Occupational Titles (4th ed., rev. 1991) ("DOT") indicates personal attendant is light work, the jobs of cashier and telephone operator[5] are listed as sedentary.

---

[4] The ALJ noted that additional nonexertional limitations precluded Jones from performing the full range of sedentary work.

[5] Jones argues that "[t]he job as a telephone operator is very similar if not identical to the Plaintiff's past job as a telemarketer." Therefore, "[i]f the ALJ concluded that the Plaintiff could not perform her past relevant work, she cannot be expected to perform a similar job or the same job as she performed in the past." (Appellant Br. at 11). However, Jones fails to substantiate the assertion that a

Moreover, the ALJ's three enumerated occupations are merely examples, and not a complete list, of the sedentary work that Jones can perform.[6]

Additionally, Jones argues that the ALJ erred in disregarding the VE's response to the following hypothetical posited by Jones's attorney:

---

telephone operator and telemarketer are identical. Moreover, the VE's testimony suggests distinct reasons why Jones might no longer be able to continue employment as a telemarketer that may be inapplicable to a telephone operator position: "The work she did for the telemarketing, anytime you're a supervisor in charge of other people, it's, it's just not considered to be few decisions, where, where you're, in fact, in charge of other people's work demands. And I think that it would exceed that limitation." Tr. at 222.

[6] We acknowledge that this Court has expressed concern in cases where there is a conflict between the VE's testimony and the DOT. See Boone v. Barnhart, 2003 WL 22966888 (3d Cir. Dec. 18, 2003). However, this Court has "not adopt[ed] a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal." Id. at *2. Additionally, Boone is distinguishable—unlike this case, in Boone there was a much more explicit conflict, a conflict as to "*each* occupation identified by the VE," and the VE's testimony was riddled with hesitation. See id. at *2-4.

Q. Assuming an adult individual the same age, education and past work experience as the Claimant, but I would like for you to *assume the following additional factors* posed in Dr. Levine's report dated February 18th, 1998. I would like you to *assume the following factors*: that this adult individual's ability to function and motivation to do things is seriously affected by her anxiety and depression; and additional factors such as her hives and her respiratory difficulty affect her ability to complete tasks in an eight-hour work period. Would such an adult individual be able to perform her past relevant work and any other work in the national economy?

A. The—what's critical to me in hearing this is the ability to complete tasks in an eight-hour workday. And all jobs are going to require that certain tasks are completed within a day, within a day's period of

time. Either so many telephones or calls are answered or so many envelopes are stuffed or one is at a cash register for a specific period of time. So completing tasks is an essential part of doing any kind of work.

Tr. at 225 (emphasis added).

Even assuming that this testimony alone is sufficient to support a claim of disability, the ALJ did not err in failing to accept the hypothetical. The hypothetical asked the VE to make certain assumptions, based in large part on Dr. Levine's report. As the District Court noted, however, because the hypothetical was inconsistent with the evidence in the record, the ALJ had the authority to disregard the response.[7] For example, the ALJ concluded that despite a diagnosis of anxiety and depression, Dr. Levine indicated that Jones's

mental functioning is normal, that she remains

alert and oriented, that her memory, concentration, and ability to relate to others are not impaired, that she keeps her appointments, that she is able to follow directions with respect to her medical care, that she is not psychotic and can carry out the activities of daily living.

Tr. at 15. The ALJ was not required to accept the assumptions posited by Jones's counsel; rather, there is substantial evidence to support the ALJ's determination at step five that there are a significant number of jobs in the national economy that Jones can perform.

V.

For the foregoing reasons, the judgment of the District Court entered on January 6, 2003 will be affirmed.

---

[7] The ALJ explicitly referenced the hypothetical in his decision, but concluded that it was not dispositive: "The claimant's counsel also presented hypotheticals to the vocational expert based on information provided by Dr. Levine, but I believe that I have adequately discussed Dr. Levine's medical reports in the above paragraphs." Tr. at 16.

8