NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2705
_____

AARON CHEYAN THOMAS,
                                        Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-17-cv-01866)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
June 19, 2020

Before: JORDAN, MATEY, and ROTH, *Circuit Judges*.

(Filed: August 12, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Aaron Thomas challenges a decision denying him disability benefits. But the record, including reports from several medical professionals, shows substantial evidence supporting that conclusion. So we will affirm.

## I. BACKGROUND

Thomas injured his neck in 2013. When his pain did not subside, Thomas consulted an orthopedic surgeon, who diagnosed him with left rotator cuff tendinitis, prescribed physical therapy, and restricted him from lifting more than ten pounds. With no improvement, he visited Leanne Mansberger, a physician assistant, who determined Thomas was temporarily unable to work. Then, after an MRI revealed some degenerative changes, Mansberger recommended Thomas find a new career. Thomas was working at the time as a local delivery truck driver. Mansberger also recommended that Thomas seek pain management and consider epidural treatments. Eventually, Thomas visited a pain management specialist, who viewed Thomas's injuries as "mostly mild in nature." (D.C. Dkt. No. 10 (A.R.) at 420.) Social Security Administration doctors confirmed that view when Thomas applied for disability benefits, finding he was not disabled.

Thomas challenged that determination in an administrative hearing before an Administrative Law Judge (ALJ). After posing questions to a vocational expert and considering the expert's opinions, the ALJ found there were jobs Thomas could still perform with his physical limitations, and affirmed the denial of benefits. After the Social Security Appeals Council denied Thomas's request for review, he brought a challenge to the ALJ's decision in federal court. There, a Magistrate Judge recommended that the

2

District Court affirm the ALJ's decision, and the District Court agreed. Now, Thomas brings this timely appeal.[1]

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE DENIAL OF BENEFITS

Before awarding disability benefits, the Social Security Administration must consider whether an applicant enjoys significant employment opportunities despite physical limitations.[2] *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). Thomas makes two challenges to the ALJ's decision: namely, that it involved 1) giving insufficient weight to Mansberger's opinion, and 2) posing flawed hypotheticals to a vocational expert. Neither warrant reversal because the ALJ's findings were "supported by substantial evidence." *See id.* (internal quotation marks and quotation omitted); *see also Biestek v. Berryhill*, 139 S.

---

[1] The District Court had subject-matter jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction under 28 U.S.C. § 1291.

[2] Determining disability benefits follows a five-step test codified at 20 C.F.R. § 404.1520(a)(4). Under that test, a claimant must not have substantial gainful employment and must have a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(i), (ii). He must also have either a qualifying disability or lack the residual functional capacity to perform his past work. *Id.* § 404.1520(a)(4)(iii), (iv). Finally, even if the claimant could not return to past work, benefits will be denied if the Social Security Administration (SSA) can show that someone with the claimant's residual functional capacity, age, education, and work experience could adjust to other employment. *Id.* § 404.1520(a)(4)(v). Here, the ALJ found Thomas satisfied steps one and two and assumed he could meet his step four burden. Thomas does not challenge the ALJ's step three finding. So our review is limited to the ALJ's determinations at step five.

Ct. 1148, 1154 (2019) (describing substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (quotation omitted).

## A.    The ALJ Gave Proper Weight to Mansberger

Thomas argues that the ALJ did not sufficiently consider Mansberger's findings and, instead, relied on the ALJ's own lay opinion. But that argument is doubly flawed. First, Thomas does not explain where the ALJ offered his own opinion. Second, and more important, at the time of Thomas's hearing, Mansberger was not a treating physician whose opinion carried special weight. *Compare* 20 C.F.R. §§ 404.1502(a)(8), 416.902(a)(8) (physician assistants qualify as "[a]cceptable medical source[s]" for claims filed after March 27, 2017), *with* 20 C.F.R. §§ 404.1527(a), 416.927(a) (physician assistants are not an "acceptable medical source" for claims before March 27, 2017). And even if her opinion qualified as an acceptable source, greater reliance on Mansberger's notes would not bolster Thomas's claim. Rather, Mansberger found that Thomas was only temporarily unable to work and that he was not diligently seeking treatment. Indeed, she recommended that Thomas seek a job requiring less heavy lifting, the same conclusion reached by the ALJ. For those reasons, the District Court did not err on this ground.

## B.    The Hypotheticals Posed to the Vocational Expert Were Adequate

A hypothetical posed to a vocational expert should include "all of a claimant's credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). If an uncontroverted medical opinion suggests a limitation, the ALJ must include it in the hypothetical before giving the vocational expert's opinion weight. *Id.* On the other hand, the ALJ has discretion to assess the credibility of "[l]imitations that are medically

4

supported but are also contradicted by other evidence in the record." *Id.* In all, a hypothetical is useful only if it "accurately portrays the claimant's individual physical and mental impairments." *Id.* (quotation omitted). With that context, Thomas argues that the hypotheticals inaccurately captured his limitations. But we find no error in the ALJ's questioning.

First, Thomas argues that all of the hypotheticals posed to the vocational expert should have included a restriction for missed time from work, as "[i]t stands to reason that someone with [Thomas's] symptoms and difficulties would be extremely likely to miss 15% of his work time, or more than two days per month." (Opening Br. at 6.) But Thomas does not point to any medical opinion supporting that reasoning. And hypotheticals need not include "every impairment alleged by a claimant." *Rutherford*, 399 F.3d at 554 (emphasis omitted).

Second, Thomas suggests that the hypotheticals should have included additional restrictions for lifting, sitting, and standing. But those restrictions fall within the discretionary zone outlined in *Rutherford*, consisting of "[l]imitations that are medically supported but are also contradicted by other evidence in the record." *Id.* While Thomas can point to medical professionals recommending a ten-pound limit on lifting, none suggested he should avoid lifting *less* than ten pounds. Indeed, an agency doctor found that Thomas could often lift less than ten pounds. Likewise, Thomas fails to cite to any medical opinion that established specific limits on sitting or standing and admits that the ALJ's restrictions drew from recommendations by an agency physician. So the ALJ was within his discretion to find these uncontroverted restrictions were supported by substantial evidence.

5

Third, Thomas argues that the hypotheticals should have included nerve deterioration. Though medical professionals did acknowledge mild deterioration, none suggested how, if at all, that condition should change the hypotheticals. Thus, there was no credibly established restriction regarding nerve deterioration.[3]

Finally, Thomas objects to the hypotheticals including an ambidextrous skill set. That detail emerged from Thomas's own testimony: when asked if he was right- or left-handed, Thomas responded that he was "[b]oth." (A.R. at 44.) So it is hard to see how including this detail is erroneous. At the least, there was enough for "a reasonable mind [to] accept [the evidence] as adequate to support a conclusion" that Thomas was ambidextrous. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In any event, it is unclear that the ambidextrous skill set so affected the vocational expert's opinion that it failed to qualify as substantial evidence. *Id.* In all, the hypotheticals "accurately portray[ed]" Thomas's substantiated impairments. *Rutherford*, 399 F.3d at 554 (quotation omitted).

### III. CONCLUSION

As the District Court correctly recognized that the ALJ relied on substantial evidence when denying Thomas disability benefits, we will affirm.

---

[3] Even if a restriction about the deterioration had been credibly established, the other restrictions built into the hypotheticals adequately address Thomas's functional limitations.