**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3275
_____

MELODY S. OLINGER,
Appellant

v.

COMMISSIONER SOCIAL SECURITY


_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No. 1:23-cv-00229)
District Judges: Honorable Alan Bloch and Honorable Marilyn J. Horan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 16, 2025


(Filed:  November 18, 2025)

Before:  RESTREPO, McKEE, and RENDELL, *Circuit Judges*.
_____

O P I N I O N[1]
_____

_____

[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Appellant Melody Olinger challenges a District Court order affirming an administrative law judge's (ALJ) denial of her claim for Social Security disability benefits. Because we discern no error in the District Court's opinion and the ALJ's decision was supported by substantial evidence, we will affirm.

I.

In 2020, Olinger applied for disability benefits claiming that the onset of PTSD, anxiety, and sciatica in August 2018 prevented her from working. An ALJ denied Olinger's claim after a telephone hearing at which Olinger and a vocational expert testified. At the hearing, Olinger relied principally on two medical opinions to support her claim: the opinion of her first treating nurse practitioner (NP), Stephanie Deible, and the opinion of her most recent treating NP, Ann Sandor.

Deible, from whom Olinger sought medical treatment in August 2018, after an unrelated workplace chemical exposure while working as a store clerk, previously opined that Olinger could not sit, stand, or walk for more than one hour each day. As a result of that incident, Olinger collected worker's compensation and disability benefits and sought additional treatment for her mental health. Years later, in 2022, Olinger met with Sandor who opined that her various medical conditions would frequently interfere with work and that she would likely miss more than two days of work each month. According to Olinger, both Deible and Sandor believed she was disabled.

In the time between Olinger's initial visit with Deible and her later visit with Sandor, Olinger sought treatment for back pain, which culminated in a lumbar

2

laminectomy in March 2020. After her surgery, as she recovered, various clinicians noted "significant improvement in her symptoms." App. 33. Her orthopedic surgeon cleared her to lift under twenty-five pounds. A pain management specialist reported that Olinger showed just mild tenderness, full muscle strength, and normal reflexes. In total, four clinicians concluded that Olinger could perform various motor activities.

The ALJ considered this evidence and ultimately rejected Deible's and Sandor's opinions for three main reasons.

First, the ALJ noted that Deible's treatment and opinion stemmed from the 2018 workplace incident, which occurred *over one year before* the onset of her allegedly disabling back pain. Thus, Deible's opinion was stale compared with the opinions of the other clinicians.

Second, the ALJ noted that Deible's and Sandor's opinions were outliers given the contrary opinions of four other clinicians. For example, a medical consultant concluded Olinger could perform light exertional work, "with occasional pushing and/or pulling with the left lower extremity, [and] frequent climbing[,] . . . stooping, and crouching." App. 33. A primary care physician agreed that Olinger "has no restrictions" in daily activities such as "kneeling, pulling, . . . standing, sitting, [and] walking." App. 33. The ALJ noted the opinion of another clinician who believed Olinger "could lift and carry eleven to twenty-five pounds," and sit, stand, and walk six to eight hours. App. 34.

Third, the ALJ noted that objective medical evidence in the form of medical records and progress notes suggested that Olinger, contrary to Deible's and Sandor's opinions, is able to perform daily living activities. The ALJ noted inconsistences between

3

Olinger's alleged difficulty performing daily functions and other evidence in the record that she regularly did laundry, cleaned, shopped, and drove. Rather, the ALJ was persuaded by a State agency medical consultant's opinion that Olinger is capable of a range of a light work.

Ultimately, while the ALJ found Olinger suffers from intervertebral disc disorders with radiculopathy, spinal stenosis of the lumber region, post-laminectomy syndrome, PTSD, depression, and generalized anxiety disorder, the ALJ concluded that she is not disabled. Rather, Olinger still has the residual functional capacity to perform a reduced range of light work. The ALJ further concluded that although Olinger could no longer work as a store clerk, there are still other jobs in the national economy she could work.

On appeal, the District Court affirmed the ALJ's decision. The District Court held "the Commissioner's findings are supported by substantial evidence." *Olinger v. Comm'r of Soc. Sec.*, No. 23-229-E, 2024 WL 4350165, at *1 (W.D. Pa. Sept. 30, 2024). The District Court concluded that the ALJ considered each of the factors necessary to evaluate the persuasiveness of each medical opinion and considered the supportability and consistency of each claim. The District Court, thus, rejected Olinger's argument that the ALJ did not properly analyze Deible's and Sandor's opinions and held that the ALJ properly considered Olinger's testimony regarding her back surgery and related pain. Olinger appealed.

Olinger argues that the ALJ erred in three regards. The first two purported errors center on whether the ALJ properly considered and explained how the opinions of Olinger's earliest treating Nurse Practitioner (NP) and most recent treating NP were unsupported by, and inconsistent with, other evidence. Olinger lastly urges that the ALJ's finding that Olinger's back pain did not rise to the level of a disabling condition was not supported by the evidence.

A.

Olinger first argues that the ALJ failed to articulate her consideration of supportability and consistency adequately when finding Deible's opinion unpersuasive.

An ALJ is required to (1) articulate her consideration of the factors of supportability and consistency with regard to any opinion she finds to be unpersuasive, and (2) point to actual inconsistencies between the subjective allegations and the other evidence. 20 C.F.R. §§ 404.1520c(b)(2) and 404.1529(c)(4). When evaluating supportability and consistency, an ALJ determines whether each medical opinion is grounded in "objective medical evidence and supporting explanations," *Zaborowski v.*

---

[2] "We review *de novo* the District Court's grant of summary judgment in favor of the Commissioner and may reverse only 'if the ALJ's findings were not supported by substantial evidence.'" *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003) (quoting *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002)). When evaluating an ALJ's decision in a disability benefits case, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consol. Edison Co., v. NLRB*, 305 U.S. 197, 229 (1938)); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol.*, 305 U.S. at 229.

*Comm'r Soc. Sec.*, 115 F.4th 637, 640 (3d Cir. 2024) (quoting 20 C.F.R. § 404.1520c(c)),

and "consistent with other medical opinions in the record," *id.*

In this case, the ALJ evaluated supportability when she determined that:

> [Deible's] opinions are not persuasive because they were rendered in 2018 and are not fully supported by the clinical signs and findings including an examination in February 2021 showing that the claimant appeared in no distress with a normal gait, no muscle spasms, [and] no pain with palpation of the lumbar spine.

App. 34. Olinger urges that Deible's opinion was based on the same condition that eventually led to her back surgery. However, Deible's assessment was performed over one year before Olinger first reported symptoms of back pain in December 2019. Setting aside the staleness of Deible's assessment, the ALJ found that her opinion that Olinger would likely experience episodes of pain twice per week for two to four hours was "not fully supported by the clinical signs and findings including examinations from April 2021 through December 2021 showing that claimant appeared alert and oriented with a normal mood and normal affect." App. 36. The ALJ satisfied the supportability requirement because she used objective medical evidence, or "clinical signs and findings" to evaluate the persuasiveness of Deible's opinion and other clinical opinions. App. 34.

The ALJ evaluated consistency when she wrote that Deible's opinions are "inconsistent with the claimant's activities of daily living, in which she reported that she prepares meals, performs household chores, drives, goes grocery shopping, and attends her scheduled appointments." App. 34. The ALJ noted Deible's "opinion is also

inconsistent with the effectiveness of treatment, the findings rendered by the State agency psychological consultants, the opinion from the consultative examiner, and the claimant's activities of daily living." App. 36. The ALJ cited Olinger's "favorable response to treatment" based on April 2020 records and found supportability in the State agency medical consultant's opinion, which "indicated that the claimant could perform light work." App. 33. Olinger's argument that the ALJ failed to address Deible's assessment that she could not sit or stand for more than one hour per day is unpersuasive; the ALJ evaluated the conflicting medical evidence of both Deible and the State agency medical consultant, but found that Deible's opinion lacked supportability, while the State agency medical consultant's findings were supported and persuasive.

As the District Court correctly concluded, the record contains substantial evidence to support the ALJ's finding that Deible's opinion lacked the supportability and consistency to be persuasive.

B.

Olinger next asserts that the ALJ erred by not properly considering Sandor's opinion that Olinger would frequently be off-task at work and miss more than two days per month. Olinger argues that the ALJ did not address the supportability of Sandor's opinion and inadequately addressed consistency.

Regarding supportability, the ALJ was not persuaded by Sandor's opinion that Olinger would frequently be off-task, because "it is not fully supported by the objective medical evidence including examinations from April 2021 through September 2021" showing Olinger experienced mild tenderness, a mildly limited range of motion of the

7

lumbar spine, full muscle strength of the lower extremities, normal reflexes, and no neurologic deficits. App. 34-35. The ALJ also cited Sandor's notes describing a February 2022 evaluation during which Olinger's "pain was stable" and she demonstrated "only mild left lower extremity weakness, no limp, and no neurologic defects." App. 31-32. The ALJ adequately addressed supportability because she cited objective medical evidence from other clinicians—and Sandor herself—that conflicted with Sandor's opinion that Olinger would frequently miss work due to her back pain.

The ALJ addressed consistency when she wrote that Sandor's opinion was "inconsistent with the findings rendered by the State agency medical consultants, the claimant's medical treatment history, and the effectiveness of treatment." App. 35. She cited progress notes which indicated that Olinger "acknowledged that medication management helped and she described adequate pain relief." App. 35. In noting the distinction between Sandor's opinion and the opinions given by the State agency medical consultants, the ALJ sufficiently evaluated consistency when finding Sandor's opinion, which was notably inconsistent with other medical opinions, unpersuasive.

We agree with the District Court's conclusion that the record contains substantial evidence to support the ALJ's finding that Sandor's opinion lacked the supportability and consistency to be persuasive.

C.

Lastly, Olinger asserts that the ALJ's finding that she is capable of a range of light work impermissibly ignores evidence that she continues to suffer from disabling symptoms arising from her back surgery. Olinger argues that the ALJ did not "point to

8

any genuine inconsistencies between the Plaintiff's testimony and the record." Appellant's Br. 26. She further contends the ALJ "failed to reconcile the rejection of Plaintiff's allegations with evidence that is clearly consistent with her testimony" that she is unable to sit or stand for more than a few minutes without having to change position or shift weight. Appellant's Br. 29.

"Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

While Olinger asserts the ALJ did not properly consider her testimony, the ALJ considered multiple pieces of evidence that suggest Olinger's back pain had improved. The ALJ considered medical records in which Olinger described her own progress: from April to September 2021, she reported that pain and medication management provided "adequate pain relief and decreased muscle cramping;" in December 2021, Olinger claimed pain relief with steroid injections and "described her pain as stable;" and in February 2022, Olinger reported stable symptoms with "only mild left lower extremity weakness, no limp, and no neurologic deficits." App. 31-32.

The ALJ was persuaded by several medical opinions that contradicted Olinger's testimony, including her orthopedic surgeon's assessment that she could lift less than twenty-five pounds, and the State agency medical consultant who indicated she could perform a range of light work. The ALJ exhaustively evaluated the intensity and

9

persistence of Olinger's back pain when deciding that she was capable of a reduced range of light work.

Contrary to Olinger's assertion that the ALJ did not sufficiently evaluate her testimony that she could not stand for more than a few minutes without leaning on something, the ALJ considered several pieces of medical evidence addressing Olinger's motor functions. Olinger testified she "could walk a quarter mile, stand six to eight minutes, [and] sit fifteen minutes." App. 30. The State agency medical consultant evaluated Olinger's ability to climb stairs, stoop, crawl, kneel, and perform sufficient motor functions necessary for a light range of work. Finally, in a December 2021 examination, Olinger was "able to ambulate without mention of an assistive device" and "sat comfortably." App. 31. The ALJ's consideration of Olinger's capacity to sit and stand suggest that she did not ignore Olinger's testimony but instead found objective medical evidence that refuted it.

In short, the District Court did not err in concluding that the record contains substantial evidence to support the ALJ's rejection of Olinger's assertion that the intensity and persistence of her back surgery prevent her from working.

III.

For these reasons, we will affirm the order of the District Court.

10