

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-1999

# Schaudeck v. Comm Social Security

Precedential or Non-Precedential:

Docket 98-5463

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Schaudeck v. Comm Social Security" (1999). *1999 Decisions.* Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5463

LISA SCHAUDECK,
        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. No. 97-cv-02718)
District Judge: The Honorable Jerome B. Simandle

ARGUED March 9, 1999

BEFORE: MANSMANN, SCIRICA, and NYGAARD,
Circuit Judges.

(Filed June 25, 1999)

        Glenn B. Carey, Esq. (Argued)
        Agnes S. Wladyka, Esq.
        Abromson & Carey
        10 Park Place
        Newark, NJ 07102
         Attorneys for Appellant

        Peter G. O'Malley, Esq. (Argued)
        Office of United States Attorney
        970 Broad Street
        Room 700
        Newark, NJ 07102
         Attorney for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

An Administrative Law Judge held that Lisa Schaudeck
did not prove that she was disabled for a continuous
twelve-month period by Hodgkin's Disease, and the District
Court affirmed this decision. See Schaudeck v. Apfel, No.
Civ.A.97-2718 (D.N.J. Aug. 3, 1998). Schaudeck argues
that the ALJ improperly determined that her impairment
did not meet the criteria of an impairment listed in
Appendix 1 to 20 C.F.R. Part 404, Subpart P, of the
regulations and failed to properly consider the effects of her
chemotherapy treatments and her substantive testimony.
We will reverse and remand the cause for a rehearing.

I.

Schaudeck was first diagnosed with Hodgkin's Disease in
1990. She was treated and the disease went into remission.
Her symptoms recurred in 1993, and in early 1994, she
began a year-long course of chemotherapy. She alleges
that, on February 7, 1994, she became disabled by the
disease and treatment and thereafter met the insured
status requirements of the Social Security Act until June
30, 1998. Although she worked as a hairdresser from 1981
until 1992 and as a waitress for three to five months in
1993, Schaudeck has not worked since.

At her hearing before the ALJ, Schaudeck testified to
significant problems resulting from her chemotherapy
treatments. She testified that, among other things, they
caused fatigue, sickness and nausea. App. at 162. She also
testified to residual effects that continued after the
chemotherapy, such as having very little energy, tiring
easily, and having to take regular naps. App. at 150, 153,
155, 164. In addition, she stated that she had frequent
stomach, leg and chest cramps and that the bottom of one
leg was numb. App. at 151-52.

The ALJ found that Schaudeck had been disabled from
February 7, 1994, until approximately August 31, 1994,

but that she was not disabled thereafter. In reaching this conclusion, the ALJ relied on a consulting doctor's report indicating that Schaudeck's Hodgkin's Disease was "responding to" the chemotherapy treatments. The ALJ thus denied her claim, holding that she had not shown a period of disability continuing for more than twelve months. The Appeals Council denied her request for review, and the District Court affirmed the ALJ's decision.

Schaudeck alleges that the ALJ erred by: (1) holding that her impairment did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) failing to properly evaluate the medical evidence and her subjective complaints of pain; and (3) failing to consider her non-exertional impairments. We have plenary review of all legal issues, see Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995), and review the ALJ's findings of fact to determine whether they are supported by substantial evidence. See 42 U.S.C. S 405(g). Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). To determine whether a finding is supported by substantial evidence, we must review the record as a whole. See 5 U.S.C. S 706.

II.

A social security insurance benefits claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. S 423(d)(2)(A). The Commissioner evaluates each case according to a five-step process until a finding of "disabled" or "not disabled" is made. See 20 C.F.R. S 404.1520(a). The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404,

3

Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment – if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. See id. S 404.1520(b)–(f).

Schaudeck was not engaged in substantial gainful employment. At the second step, the ALJ determined that Schaudeck had established the existence of a "severe impairment" related to the Hodgkin's Disease and its "residual effects." At the third step, however, the ALJ found that the impairment did not meet or equal in severity any of those listed in Appendix 1 to Subpart P of Regulation 404. At step four, the ALJ considered Schaudeck's RFC and found that she could perform her past work of hairdressing and waitressing. ALJ's Decision at 3–4; app. at 127–28. Thus the ALJ did not reach step five.

A. The listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

Schaudeck alleges that the ALJ erred when he found that her Hodgkin's Disease did not meet or equal in severity any of the impairments listed in Appendix 1 to Subpart P of Part 404 of the regulations. The list includes "Hodgkin's Disease . . . not controlled by prescribed therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1, S 13.06A (emphasis added).[1] The

_____

1. The full definition in the regulations is:"Hodgkin's Disease or non–Hodgkin's lymphoma with progressive disease not controlled by prescribed therapy." 20 C.F.R., Pt. 404, Subpt. P, App. 1, S 13.06A. We read the clause "with progressive disease" as describing "non–Hodgkin's lymphoma" because Hodgkin's Disease is by definition the "progressive enlargement of the lymph nodes, spleen, and general lymphoid tissue." Dorland's Illustrated Medical Dictionary 487 (27th ed. 1988). Thus, for our purposes, the relevant term is "Hodgkin's Disease . . . not controlled by prescribed therapy."

ALJ apparently relied on the report of Dr. Wilchfort, a nontreating physician, who wrote that Schaudeck seemed to be "responding to" her treatment. From this statement, the ALJ found that the Hodgkin's Disease was "controlled by" the chemotherapy.2 The issue is whether the ALJ erred by concluding that the term "responding to" was equivalent to "controlled by."

We conclude that the terms are not synonymous and that Schaudeck's disease was not "controlled by" her chemotherapy simply because it was "responding to" the treatment. We hold that "control," as used here, means that the treatment has been so successful that the disease can be considered effectively neutralized. Webster's Dictionary supports our holding. It defines "to control" as: "to exercise restraining or directing influence over . . . to have power over . . . to reduce the incidence or severity of especially to innocuous levels." Webster's Ninth New Collegiate Dictionary 285 (1988) (emphasis added).

In addition, the context in which the phrase "controlled by" appears in the Appendix is further reinforcement for our conclusion that the phrase should signify something more than that a treatment is merely affecting the disease. Indeed, section 13.06C of the CFR Appendix, which lists the various impairments, also lists "[e]pidermoid carcinoma in a lymph node in the neck not responding to prescribed therapy," 20 C.F.R. Pt. 404, Subpt. P, App. 1,S 13.06C (emphasis added), thus distinguishing between diseases that are "responding to" treatment and those "controlled by" it. Each term clearly means something different. Thus, simply because Schaudeck's cancer was responding to the chemotherapy does not mean that the disease was controlled by the treatment.

Because the ALJ considered only evidence indicating that Schaudeck's disease was "responding to" treatment, we will remand the cause to give the ALJ an opportunity, using this definition, to reassess whether Schaudeck's Hodgkin's Disease meets or equals in severity the listed impairment of

_____

2. This finding was not explicit in the ALJ's Decision but can be inferred from the ALJ's finding at step three of the evaluative process.

5

"Hodgkin's Disease . . . not controlled by prescribed therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1,S 13.06A.

B. Evaluating the medical evidence

On remand, should the ALJ again find that Schaudeck's Hodgkin's Disease did not meet or equal a listed impairment, the ALJ will need to reassess his determination that Schaudeck was capable of doing her past relevant work despite her severe impairment and make more explicit the reasoning behind his conclusion.

An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence. See Dobrowolsky v. Califiano, 606 F.2d 403, 409 (3d Cir. 1979). Although the ALJ can reject such claims if he does not find them credible, see Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), when assessing a claimant's credibility:

> [i]n instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject that individual's complaints solely on the basis of such personal observations. Rather, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

Social Security Ruling ("S.S.R.") 95-5P, 1995 WL 670415, at *2 (emphasis added).

We have reemphasized the need for such specificity, holding that the ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding. See Cotter v. Harris, 642 F.2d 700, 705-06 (3d Cir. 1981); see also S.S.R. 96-7P, 1996 WL 374186, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the

6

determination or decision."). This explanation provides us with a basis on which to assess whether "significant probative evidence was not credited or [was] simply ignored." Cotter, 642 F.2d at 705. Here, the need for specificity and articulation is strong because Schaudeck's history of chemotherapy supports her subjective claims.

In particular, two flaws in the ALJ's analysis of the evidence require reconsideration on remand. First, the ALJ failed to consider the support for Schaudeck's testimony provided by the numerous medical reports detailing her chemotherapy regimen. In the section of the Decision titled "The Evidence," the ALJ noted that on December 29, 1994, February 9 and March 9, 1995, Schaudeck told her doctors that she was "feeling fine" and had no problems. App. at 126. In addition, the ALJ cited Dr. Wilchfort's report stating that Schaudeck was "responding to" the treatment. This, however, was the extent of the ALJ's discussion of the medical evidence.

The ALJ's complete discussion of Schaudeck's complaints was as follows:

> The claimant's subjective complaints of disabling pain and other symptoms and limitation precluding all significant work activity are not credible or consistent with Social Security Ruling 95-5p and Regulations 20 CFR 404.1529 and 416.929. Such complaints, beyond a limited period of acute distress at the onset of the disease, cannot reasonably be accepted as consistent with the laboratory findings, medical reports, and daily activities. The above-summarized medical evidence reveals objective findings that, in my opinion, could not reasonably produce the subjective complaints after an acute period of distress lasting six to seven months.

ALJ's Decision at 3 (emphasis added). Of course, the "above-summarized medical evidence" consisted solely of the two findings noted above and included no discussion whatsoever of Schaudeck's medications or their side effects.

It is undisputed that Schaudeck suffered from Hodgkin's Disease and that the medications used to treat the disease can have numerous side effects. When considering the side effects of treatment, the regulations instruct:

7

Effects of therapy. Significant posttherapeutic residuals, not specifically included in the category of impairments for malignant neoplasms, should be evaluated according to the affected body system.

Where the impairment is not listed in the Listing of Impairments and is not medically equivalent to a listed impairment, the impact of any residual impairment including that caused by therapy must be considered. The therapeutic regimen and consequent adverse response to therapy may vary widely; therefore, each case must be considered on an individual basis. It is essential to obtain a specific description of the therapeutic regimen, including the drugs given, dosage, frequency of drug administration, and plans for continued drug administration. It is necessary to obtain a description of the complications or any other adverse response to therapy such as nausea, vomiting, diarrhea, weakness, dermatologic disorders, or reactive mental disorders.

20 C.F.R. Pt. 404, Subpt. P, App. 1, S 13.00D (emphasis added).

The record demonstrates that Schaudeck's chemotherapy regimen consisted of several drugs, including, Mechlorethamine (also known as Mustard), Oncovin (or Vincristine), Procarbazine, Prednisone, Kytril, Ativan, Decadron, Compazine, and G-CSF (granulocyte colony stimulating factor). App. 239, 280-99. The known side effects of these drugs are severe,[3] thus Schaudeck's treatment coincided with the pain and weakness to which she testified.

_____

3. Among the numerous common side effects for these drugs are: for mechlorethamine, severe nausea, bone marrow depression and gastrointestinal symptoms; for Oncovin, neuritic pain (due to nerve inflammation) and muscle wasting; for Ativan, somnolence (unnatural drowsiness); for Decadron, muscle weakness and loss of muscle mass; for Compazine, drowsiness; for G-CSF, bone pain. See Dorland's Illustrated Medical Dictionary 535 (Neupogen, a G-CSF), 990 (mechlorethamine) (1988); Physician's Desk Reference 1625 (Oncovin), 1771 (Decadron), 3038 (Compazine), 3269 (Ativan), (53d ed. 1999).

Schaudeck was taking the numerous drugs that made up her chemotherapy regimen well after the date on which the ALJ found her no longer disabled. Yet, the ALJ did not indicate why he believed that Schaudeck's condition could have improved when she was continuing to take the same debilitating drugs.4

Second, the ALJ failed to explain why he would rely on the post-August 31, 1994 doctors' reports that Schaudeck was feeling fine, see ALJ's Decision at 2, when similar statements appeared in doctors' reports throughout her treatment, including during the period that the ALJ found Schaudeck was suffering from a severe impairment. There is no obvious logical reason to differentiate between these similar statements that appear throughout her medical treatment, and the ALJ offered none.

The ALJ's failure in this regard is particularly troubling in light of the fact that Schaudeck testified that she always told the doctors that she was feeling fine because "everybody [at the clinic] knows what the problems are. . . . They know being sick is just normal . . . Those problems are all normal in that situation. Everybody is sick like that. That's the normal thing. . . . [W]hen you say okay, it's just okay for what you're going through." App. at 165-66. Although we normally defer to the ALJ's decision not to credit a claimant, here, that decision is logically unsound. There was no reason for the ALJ to accept some of Schaudeck's statements as proof that she was not disabled while ignoring identical statements made during the time period that the ALJ determined that she was disabled.

Where competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence, see

_____

4. Schaudeck also asserts that the ALJ's finding that she had sought "only limited modalities of treatment for the alleged pain and limitation, and does not take medication for the impairment," app. 127, was erroneous. Here, the ALJ may have been referring to Schaudeck's decision not to seek treatment beyond the chemotherapy, but he did not explain this. It is clear that Schaudeck declined to seek certain treatment after her chemotherapy ended. However, this is another instance in which the ALJ did not make clear what evidence he was relying on to form his conclusion.

9

Dobrowolski, 606 F.2d at 407, and explain a rejection of the evidence. See Benton ex rel. Benton v. Bowen, 820 F.2d 85, 88 (3d Cir. 1987). By failing to consider the drugs that Schaudeck was taking throughout her chemotherapy treatment and make "a thorough discussion and analysis of the objective medical . . . evidence" S.S.R. 95-5P, 1995 WL 670415, at *2, the ALJ erred. On remand, the ALJ must give a clear and logical statement of the facts supporting his conclusions.5

III.

We conclude that the ALJ applied an erroneous definition of "controlled by" and that he erred by failing to properly consider the evidence of record and adequately explain his decision. As a result, we will reverse the District Court's order and remand the cause to the District Court with instructions to remand to the Commissioner of Social Security, for further proceedings not inconsistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

5. Schaudeck also asserts that the ALJ erred by failing to consider her non-exertional impairments. These are impairments that do not affect a claimant's physical strength but may nevertheless prevent them from engaging in gainful employment. See, e.g., Stunkard v. Secretary of Health & Human Servs., 841 F.2d 57, 60 (3d Cir. 1988). Because we are remanding the cause for the reasons discussed, we need not reach this issue.