

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2004

# Henderson v. Social Security Admn

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1018

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Henderson v. Social Security Admn" (2004). *2004 Decisions.* Paper 1094.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1094

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-1018

———

WILLIAM E. HENDERSON,

Appellant

v.

SOCIAL SECURITY ADMINISTRATION

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Dist. Ct. No. 01-cv-00562)
District Judge: Honorable Ronald L. Buckwalter

———

Submitted Under Third Circuit LAR. 34.1(a)
October 15, 2003

Before: SLOVITER, ROTH and CHERTOFF, Circuit Judges.

(Filed January 14, 2004)

———

OPINION

———

CHERTOFF, Circuit Judge.

William E. Henderson appeals from the District Court's judgment affirming the

Commissioner of Social Security's denial of his application for disability insurance benefits. Henderson argues that the Administrative Law Judge (ALJ) erred in failing to adequately follow adjudicative guidance in Social Security Ruling (SSR) 83-12 when reaching his determination that Henderson was not eligible for benefits. For the reasons stated below, we will affirm the District Court's judgment.

I.

Henderson was born on May 29, 1944. He has a tenth grade education and past work experience as a sewer inspector. Henderson claims disability based primarily on musculoskeletal impairments with additional limitations imposed by diabetes and hypertension. Among the results of these impairments is an apparent inability to sit or stand for an extended period of time. Henderson's application for disability insurance benefits was denied both initially and upon reconsideration. He then requested a hearing before an ALJ. On August 27, 1998, following a hearing which included testimony from a Vocational Expert (VE),[1] the ALJ rendered a decision concluding that considering Henderson's age, education, work experience, and residual functional capacity, he was capable of performing a significant number of jobs in the national economy. In particular, the VE identified the available jobs as gate attendant (54,000 nationally; 2,500 locally), inspector/testor (132,000 nationally; 2,500 locally), and cashier (400,000

_____

[1] For purposes of this opinion, the terms Vocational Expert (VE) and Vocational Specialist (VS) are used interchangeably.

nationally; 5,000 locally).[2]

On December 22, 2000, the Appeals Council denied Henderson's request to review the ALJ's decision. Subsequently, Henderson sought judicial review of the adverse decision, pursuant to 42 U.S.C. § 405(g), in the United States District Court for the Eastern District of Pennsylvania. On September 30, 2002, Magistrate Judge Charles B. Smith issued a Report and Recommendation, recommending that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted. On November 6, 2002, the Honorable Ronald L. Buckwalter approved and adopted Magistrate Smith's Report and Recommendation. This appeal followed.

II.

This Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. The role of this Court is identical to that of the District Court; we must determine whether there is substantial evidence to support the Commissioner's decision. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It is less than a preponderance of the evidence but more than a mere scintilla." Id. Overall, the substantial evidence standard is a deferential standard of review. Schaudeck v.

---

[2] The VE specifically suggested Henderson could perform the job of cashier at a self service station, ticket booth, or parking lot.

Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is disabled. See 20 C.F.R. § 404.1520; see generally Plummer, 186 F.3d at 428. In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a). In step two, the Commissioner determines whether the claimant is suffering from a severe impairment. If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). In step three, the Commissioner evaluates whether the evidence establishes that the claimant suffers from a listed impairment. If so, the claimant is automatically eligible for benefits. If the claimant does not suffer from a listed impairment or its equivalent, however, the Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(d). In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(e). Finally, in step five the Commissioner considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and "residual functional capacity." If so, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(f). In this final step, "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428.

In this case, the ALJ reached step five, and concluded that even taking into account the claimant's impaired ability to sit or stand for extended periods, a significant number of jobs existed in the national economy that Henderson could perform. Accordingly, Henderson was found not disabled. The issue on this appeal arises from the ALJ's step five residual functional capacity determination.

III.

SSR 83-12 provides a framework for adjudicating claims where an individual's residual functional capacity does not coincide with one of the defined exertional ranges of work set forth in the numbered table rules of the Social Security Regulations. Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. §§ 402.35(b)(1), (2). SSR 83-12 says that "if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" However, if the individual's exertional level falls somewhere "'in the middle'" in terms of regulatory criteria, "more difficult judgments are involved" and accordingly "VS assistance is advisable." In other words, a VE's assistance may be needed when a claimant's particular limitations do not fall neatly within one level or another of capacity.

The Ruling also specifically discusses "Special Situations," analogous to Henderson's condition, where a claimant must be able to alternate sitting and standing while at work, and advises consultation of a VS. The pertinent section provides:

> There are some jobs in the national economy . . . in which a person can sit or stand with a degree of choice. . . . However, most jobs have ongoing work

processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12. SSR 83-12 further specifies that "[w]henever vocational resources are used . . . the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country."[3]

This Court concludes that the ALJ followed the mandates of SSR 83-12. While the ALJ did not explicitly reference the Ruling, the decision clearly follows the letter and spirit of SSR 83-12. There is no suggestion that an ALJ commits reversible error merely by failing to provide a citation to a ruling, so long as the ruling is adhered to and the ALJ's decision is supported by substantial evidence. Here, after following steps one through four outlined above, the ALJ proceeded to the step five inquiry of whether other jobs exist to which the claimant can make a successful vocational adjustment. In accordance with SSR 83-12, however, the ALJ noted that a "strict application" of the Medical-Vocational Guidelines is "not possible . . . as the claimant has limitations which narrow the full range of work he is capable of performing." Tr. at 24.[4] The ALJ focused

---

[3] The VE specifically testified to the national and local availability of the identified jobs, Administrative Transcript ("Tr.") at 60, and these numbers were specifically cited in the ALJ opinion, Tr. at 24.

[4] "Tr." refers to the Administrative Transcript.

on the claimant's need to alternate sitting and standing. The ALJ employed the assistance of a VE, who specifically indicated that each of the identified jobs would permit a person to alternate sitting and standing at will.[5]

A factually analogous case in the Fourth Circuit, Walls v. Barnhart, 296 F.3d 287 (4th Cir. 2002), supports the conclusion that the ALJ properly relied on consultation from a VE in assessing the impact of Henderson's sit/stand constraint. In analyzing SSR 83-12, the Fourth Circuit explained, "The Ruling acknowledges that there are jobs that allow sit/stand options. It directs the agency to consult with a VE to assess the impact of that

---

[5] The pertinent portion of the VE testimony provides:

Q     I'd like for you to assume a person of the same age, education, work background as Mr. Henderson . . . . And presume that the . . . hypothetical individual could perform a range of light exertional work. . . . However, *the individual would need an opportunity to alternate sitting and standing* . . . . Given those capacities and those limitations would such a person be able to perform the work previously performed?
A     No, Your Honor and that's based upon he didn't have a sit/stand option . . . .
Q     Would there be other work that such a person could perform?
A     Well it [sic] the light range yes, Your Honor, I mean the individual could perform a job such as a gate attendant for which there is 2,500 locally and 54,000 nationally. I think the individual could also perform the job . . . as an inspector/tester of small items for which there's 2,500 locally and 132,000 nationally. He also could perform a job such as a cashier at a self service station, ticket seller, parking lot combination for which there's 5,000 locally, 400,000 nationally.
Q     Okay, would these jobs be unskilled positions?
A     Yes, Your Honor.
Q     *And each of these jobs would allow the person to alternate sitting and standing at will?*
A     Yes, Your Honor.

Tr. at 59-61 (emphasis added).

option on the occupation base. The Ruling does not prescribe a formula for assessing what jobs are available . . . ." Id. at 291. Accordingly, the Fourth Circuit reversed the district court and affirmed the ALJ's denial of benefits, explaining that the ALJ properly consulted and relied on the VE's testimony. Id. at 292.

Henderson directs this Court's attention to Boone v. Barnhart, No. 02-3256, 2003 WL 22966888 (3d Cir. Dec. 18, 2003). In Boone, this Court rejected the contention that an ALJ commits *per se* reversible error under SSR 83-12 by failing to specify the precise limitations on the range of work:

> [W]e shall not interpret SSR 83-12 to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform.

Id. at *5. Nevertheless, the Court went on to conclude that substantial evidence did not support the ALJ's conclusion that Boone could perform a significant number of jobs in the economy. Boone, however, is distinguishable from the present case. In Boone, this Court concluded that

> [g]iven that SSR 83-12 suggests that Boone cannot perform most sedentary or light jobs (because of her need to have the option to sit or stand at will . . .), we cannot—as the Commissioner would have us do—assume that the ALJ's finding that Boone can perform a limited range of light work means that she can perform a significant number of jobs in the economy.

Id. at *6. In contrast, in Henderson's case, the ALJ specifically consulted a VE to determine the available number of jobs in light of the fact that Henderson did not fall within a single category because of limitations on his ability to sit or stand for prolonged

periods.   Effectively, the ALJ anticipated the approach that we mandated in <u>Boone</u>.

Finally, Henderson suggests that the number of *occupations* (three to five) identified by the ALJ may be insufficient to warrant a finding of significant jobs in the national economy.[6]   This argument, however, misconstrues the framework for making a determination of disability.   This Court must uphold the ALJ's findings as long as there is substantial evidence, based on the VE's testimony and the record as a whole, to support the ALJ's determination that there are a significant number of *jobs* in the national economy the claimant can perform.   The regulations specifically require a finding of a significant number of *jobs*, and do not require the existence of multiple occupations: "Work exists in the national economy when there is a significant number of *jobs* (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."   20 C.F.R. § 404.1566(b) (emphasis added).   The ALJ identified, with the assistance of a VE, the existence of such jobs.   In fact, even Henderson concedes that he "does not dispute the ALJ's identification of alternate work within his capacity."   Appellant Br. at 7.   There is no support for the suggestion that where the ALJ has found a claimant capable of performing a significant number of jobs in the national economy, a claimant should be rendered disabled merely

_____

[6] Appellant points to the definition of "occupational base" in SSR 83-10: "The number of occupations, as represented by RFC [residual functional capacity], that an individual is capable of performing.  These 'base' occupations are unskilled in terms of complexity.  The regulations take notice of approximately 2,500 medium, light, and sedentary occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations.  Each occupation represents numerous jobs in the national economy."  SSR 83-10.

because these jobs only fall within a few occupations.

VI.

For the foregoing reasons, the judgment of the District Court entered on November 6, 2002 will be affirmed.

———

TO THE CLERK:

Please file the foregoing opinion.

/s/ Michael Chertoff, Circuit Judge
Circuit Judge

DATED: January 14, 2004