James THOMPSON, Plaintiff

v.

Jo Anne BARNHART, Commissioner of the Social Security Administration, Defendant

No. CIV.A.04–3757.

United States District Court, E.D. Pennsylvania.

Aug. 17, 2005.

---

Robert Savoy, Trevose, PA, for Plaintiff.

Eda Giusti, Social Security Administration, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

James D. Thompson appeals the denial of his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, by the Commissioner of the Social Security Administration (the "Commissioner"). Jurisdiction is proper under 42 U.S.C. § 405(g). Presently before the Court are the parties' cross motions for summary judgment. For the reasons that follow, Plaintiff's motion is denied, Defendant's motion is granted, and summary judgment is entered in favor of the Commissioner.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 1975, at the age of forty-two, Plaintiff fell fifteen feet off the side of a ship while working as a sandblaster at the Philadelphia Naval Yard. Immediately following the injury, he was hospitalized for approximately two weeks with lower back and left leg injuries. He also suffered partial hearing loss in one ear, and allegedly developed a severe drinking problem after the accident.

Following his release from the hospital, Plaintiff had daily physical therapy for approximately one year. In 1976 or 1977, Dr. T.A. Javian [1] cleared him to perform light duty work, and Plaintiff returned to work at the Naval Yard. However, he worked for less than ninety days, as he did not have the skills for any light-duty jobs at the Naval Yard. In October 1977, the Naval Yard allowed Plaintiff to retire on disability status and gave him a pension, on the recommendation of Dr. Javian. Despite recommending that Plaintiff retire, Dr. Javian concluded that Plaintiff was only minimally disabled, that his reflexes and motor strength were normal, and that the objective physical findings did not support the degree of Plaintiff's stated pain symptoms.

Between 1979 and 1986, Plaintiff worked for at least five different employers, but was fired from or quit each job after only a few months. [2] Plaintiff testified that his back pain did not interfere with his ability to work at two of these positions: his position as a night watchman in 1980 and his employment as a janitorial supervisor in 1986. [3] He testified that he quit the former job because he believed illegal activities were going on in the building, [4] and that he was fired from the latter job because he did not get along with his supervisor. [5] He testified that he left three other jobs because of back pain.

This case concerns Plaintiff's fourth DIB application, filed on November 17, 1987 (the "1987 application"). [6] The 1987 application alleges disability as of March 1980. Plaintiff's date last insured is December 31, 1981. In this application's long journey through the various appeals, several Ad-

1. Dr. Javian was not Plaintiff's treating doctor, but examined him on several occasions after his injury in connection with his employment at the Naval Yard.

2. R. at 148–159.

3. R. at 149–150 and R. at 159, respectively.

4. R. at 149.

5. R. at 158–159.

6. Plaintiff made three prior applications for DIB on June 23, 1978, May 13, 1980 and July 27, 1983. The 1978 application was denied initially and upon reconsideration, and Plaintiff did not request review by an ALJ. The 1980 and 1983 applications were denied initially, and Plaintiff did not request reconsideration. These three denials held that Plaintiff's back injury, left leg injury, partial hearing loss, or high blood pressure did not render him disabled prior to March 1980.

ministrative Law Judges ("ALJ"s) have considered Plaintiff's back injury, mental health, alcohol addiction, and partial hearing loss in one ear. However, the only issue before this Court is the extent to which Plaintiff's back injury has left him disabled.

Plaintiff's 1987 application was denied initially, on reconsideration, and after an administrative hearing before an ALJ.[7] Plaintiff appealed the ALJ's March 30, 1989 decision to the Social Security Appeals Council, which vacated and remanded the case for further consideration. The same ALJ held a supplemental hearing, and on August 28, 1991 decided once again that Plaintiff was not disabled. Plaintiff appealed, and the Appeals Council vacated and remanded this decision, extended Plaintiff's date last insured through December 31, 1981, ordered a reopening of the 1983 application, and ordered a new ALJ to evaluate Plaintiff's limitations on a remand. After a third hearing, the new ALJ denied Plaintiff's application on March 27, 1993, finding that Plaintiff's subjective complaints of pain were not credible and that Plaintiff had the functional capacity to perform sedentary work. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.

On November 10, 1993, Plaintiff appealed to the Eastern District of Pennsylvania. On January 11, 1995, the Honorable Ronald L. Buckwalter remanded the case to the Commissioner for consideration of Plaintiff's alcoholism. After yet another hearing, an ALJ denied Plaintiff's application on August 10, 1996. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. In July 1997, Plaintiff again appealed to the

Eastern District of Pennsylvania. The Honorable Clifford Scott Green remanded the case for further evaluation of Plaintiff's hearing loss. After a fifth administrative hearing, an ALJ once again denied Plaintiff's application on January 30, 2002. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.

Plaintiff appealed the Commissioner's decision by filing an action in the Eastern District of Pennsylvania on April 26, 2002. This Court issued a decision on September 10, 2003, remanding the case so that the ALJ could: 1) resolve certain internal conflicts in Dr. Javian's opinion; 2) support his rejection of the opinion of Plaintiff's treating physician, Dr. Marc S. Zimmerman, that Plaintiff was unable to work; and 3) name specific jobs in the national economy that Plaintiff can perform despite his functional limitations. On remand, Plaintiff also raised two additional issues for consideration by the ALJ: evidence of his ability to bend and the credibility of his earlier testimony regarding pain. After an administrative hearing, the ALJ again denied Plaintiff's application on May 24, 2004. The Appeals Council thereafter denied Plaintiff's request for review, making the ALJ's decision final. The Plaintiff appealed to this Court for the second time on August 9, 2004.

## II. STANDARD OF REVIEW

■ The Social Security Act (the "Act") provides for judicial review of any "final decision of the Commissioner" in a disability proceeding.[8] The Court may enter a judgment "affirming, modifying or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."[9] However, the Commissioner's

---

7. Plaintiff was represented by counsel in this and all subsequent administrative and judicial proceedings.

8. 42 U.S.C. § 405(g).

9. *Id.*

findings "as to any fact, if supported by substantial evidence, shall be conclusive." [10] Accordingly, the Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." [11]

 Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[12] Substantial evidence has been defined as "more than a mere scintilla" but somewhat less than a preponderance of the evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [13] The standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." [14]

## III. DIB ELIGIBILITY STANDARDS

In order for a claimant to receive DIB, he must demonstrate that he suffers from a medically determinable physical or mental impairment which renders him unable to engage in any substantial, gainful work which exists in substantial numbers in the national economy.[15] The Social Security Administration evaluates the claimant's alleged disability pursuant to a five-step sequential process,[16] and then determines whether the claimant is disabled, as defined by the Act and accompanying regulations.[17] This case concerns step five of the analysis.[18] Plaintiff asserts that the ALJ's conclusion at step five, that Plaintiff can engage in substantial gainful employment in sedentary jobs existing in the national economy, is not supported by substantial evidence. Plaintiff specifically claims that: 1) the ALJ improperly rejected Dr. Javian's and Dr. Zimmerman's opinions, given in 1977 and 1991, respectively, that Plaintiff is unable to work, and instead gave undue weight to the contrary opinion of the medical expert who testified at the hearing; 2) the ALJ failed to take into account certain functional limitations, such as Plaintiff's increased pain during damp weather and his inability to bend; and 3)

10. *Id.*

11. *Schwartz v. Halter,* 134 F.Supp.2d 640, 647 (E.D.Pa.2001).

12. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir.1999).

13. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jesurum v. Sec'y of the United States Dept. of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir.1995).

14. *Schaudeck v. Comm'r of S.S.A.,* 181 F.3d 429, 431 (3d Cir.1999).

15. 42 U.S.C. § 423(d).

16. These steps are as follows: 1) the claimant must establish that he is not currently engaging in substantial gainful activity; 2) the claimant must establish that he suffers from a severe impairment; 3) if the claimant demonstrates that his disability meets or equals an impairment listed in 20 CFR Pt. 404, Subpt. P, App. 1, he is considered *per se* disabled and entitled to DIB, and the evaluation process ends there; 4) if the claimant does not satisfy step three, then he must establish that he does not have sufficient residual functional capacity to perform his past relevant work; and 5) if he does so, the burden shifts to the Commissioner to show that the claimant can perform other work. *Burns v. Barnhart,* 312 F.3d 113, 119 (3d Cir.2002).

17. *See* 20 C.F.R. § 416.920.

18. It is undisputed that: Plaintiff is not currently engaging in substantial, gainful activity (satisfying step one); Plaintiff suffers from a severe impairment (satisfying step two); Plaintiff's disability does not meet or equal a listing (failing step three); Plaintiff cannot perform his past relevant work as a sandblaster of ships (satisfying step four).

the ALJ's finding that the Plaintiff's subjective complaints of pain were not credible was not supported by substantial evidence.

## IV. *DISCUSSION*

### A. *The ALJ's Finding that Plaintiff's Subjective Reports of Pain Were Not Credible*

The Court takes up this issue first, because the resolution of the remaining issues depends in part on Plaintiff's credibility. The Court previously addressed this issue in its September 10, 2003 Opinion, and found that the ALJ's reasons for finding Plaintiff not credible were "sufficient given the deference this Court must afford the ALJ." [19] Therefore, the Court did not remand the case on this issue. However, the Plaintiff raised it anew at his ALJ hearing, and has appealed the ALJ's affirmation of his previous findings on Plaintiff's credibility.

■ Plaintiff did not testify at the remand hearing which is the subject of this appeal. The ALJ heard testimony from an independent orthopedic expert, Dr. Stanley Askin, and from an independent vocational expert. The ALJ found that nothing in Dr. Askin's testimony or Dr. Zimmerman's records warranted a change from the prior credibility findings.[20] The Court agrees and finds that the ALJ's renewed determination that Plaintiff's subjective reports of pain are not credible is supported by substantial evidence.

### B. *Resolution of Internal Contradictions in Dr. Javian's Opinion*

In 1977, Dr. Javian concluded that Plaintiff had a "pain syndrome," adding that "objective information [does] not support the degree of his stated symptoms," and "in my opinion, Mr. Thompson was never considered totally disabled." [21] Dr. Javian noted that Plaintiff's reflexes and motor strength were normal in January 1978.[22] Despite finding Plaintiff to be only "minimally disabled" and capable of doing light duty work, Dr. Javian recommended that Plaintiff retire from the Naval Yard because of his disability status. This Court remanded the case to the ALJ, in part to resolve the internal contradictions in Dr. Javian's findings and recommendations.

■ Pursuant to this Court's remand order, the ALJ addressed in detail the inconsistencies in Dr. Javian's statements. As the ALJ interpreted the record, Dr. Javian found Plaintiff only minimally disabled, but that disability, along with his educational and work history, rendered him unsuitable for any employment *in the Naval Yard*. This interpretation is consistent with Plaintiff's testimony that he was medically cleared for light duty work in the Naval Yard, but did not have the education or skills to perform the light duty jobs which were available then and there. His inability to work at the Naval Yard does not necessarily render Plaintiff unsuitable for *any* gainful employment *in the national economy*, and Dr. Javian never offered any opinion on this latter issue. The Court finds that the ALJ's analysis of the seeming inconsistencies in Dr. Javian's

---

19. September 10, 2003 Opinion at 9.

20. The prior ALJ considered most of the factors outlined in SSR 96–7p, and found that the evidence tended to cast doubt on the severity and persistence of Plaintiff's reported symptoms. The most appreciable reason given for finding Plaintiff not credible was Dr.

Javian's finding that Plaintiff's subjective pain symptoms were out of proportion to what one would expect given the objective clinical findings.

21. R. at 370.

22. R. at 371.

statements is supported by substantial evidence.

### C. Reasons for Rejecting Dr. Zimmerman's Opinion that Plaintiff is Disabled

In a 1991 letter written in support of Plaintiff's 1987 DIB application, Dr. Zimmerman stated: "I do not believe that [Plaintiff] is able to work at this time." [23] In the January 30, 2002 ALJ decision, the ALJ rejected Dr. Zimmerman's opinion without adequate justification and found that Plaintiff was able to work at unskilled, sedentary jobs in the national economy. On remand, the Court directed the ALJ to review this finding, and if ALJ again rejected Dr. Zimmerman's opinion, the Court directed the ALJ to properly support this rejection in light of the deference that must be shown to treating physicians.

The medical records Dr. Zimmerman provided to the Social Security Administration in support of Plaintiff's 1987 application postdate the relevant time period of March 1980 through December 31, 1981. The earliest records provided by Dr. Zimmerman are from 1983. However, because Plaintiff's symptoms of back pain began with his injury in 1975, the Court will assume that Plaintiff was diagnosed with and treated for chronic lower back pain during the time frame relevant to this appeal.

■ According to Dr. Zimmerman's records, in 1983 Plaintiff had mild degenerative joint disease and a slightly bulging disc.[24] Dr. Zimmerman also noted that Plaintiff suffered from "mild" or "minimal" back spasms and tenderness on some examinations,[25] and that Plaintiff's pain was exacerbated by bending, lifting, or sitting for long periods.[26] However, most of the objective tests Dr. Zimmerman conducted were negative: Plaintiff had no motor or sensory deficiencies, disorganized motor function, deficits in muscle strength, muscle atrophy or problems with his nerve root.[27] Dr. Zimmerman did not prescribe any assistive devices, such as a cane or back brace, for Plaintiff,[28] but he did prescribe pain medication (darvocet and naprosyn).[29]

The ALJ's most recent opinion discusses in detail why he did not credit Dr. Zimmerman's 1991 opinion that Plaintiff was unable to work. The ALJ noted that according to Dr. Askin, the medical expert who testified at the hearing, Dr. Zimmerman's medical file included few objective clinical findings that would support Plaintiff's subjective complaints of pain. The Court finds this to be an accurate summary of Dr. Askin's testimony,[30] and also finds Dr. Askin's testimony to be an accu-

---

**23.** R. at 423.

**24.** R. at 389.

**25.** See R. at 423.

**26.** R. at 389.

**27.** R. at 389. Although Dr. Javian noted no decreased reflexes in 1978, Dr. Zimmerman found that Plaintiff had decreased reflexes in 1987 and thereafter. However, without evidence from the intervening years, the Court cannot determine whether Plaintiff would have experienced decreased reflexes during the relevant time period.

**28.** R. at 389.

**29.** R. at 428.

**30.** Dr. Askin pointed out that Dr. Zimmerman's medical records noted mild spasms and tenderness, but no motor or sensory deficits, and muscle strength within normal limits. R. at 581. Dr. Zimmerman noted negative sitting root and straight leg raising tests, and no evidence of nerve root damage. R. at 581.

rate analysis of Dr. Zimmerman's medical records for Plaintiff's treatment.

Accordingly, the Court accepts the ALJ's reasons for rejecting Dr. Zimmerman's opinion that Plaintiff was unable to work, given that: 1) Dr. Zimmerman's medical records lacked objective data to support a complete inability to work during the relevant time; 2) Dr. Zimmerman's opinion that Plaintiff could not work "at this time" was rendered in 1991, ten years after the relevant time period for the 1987 application; and 3) the ALJ found that Plaintiff's subjective complaints of pain and functional limitations, while credited by Dr. Zimmerman, were not credible. While the Court might have reached a different conclusion on this issue, the ALJ's determination is supported by substantial evidence.

### D. *The Vocational Expert's Testimony*

On remand, the Court directed the ALJ to articulate *specific* jobs that exist in the national economy that Plaintiff could perform, given his education, vocational background, and residual functional capacity, because the prior decision cited only a class of jobs (sedentary, unskilled). As required by the Court's remand, the ALJ heard testimony from a vocational expert, suggesting several specific jobs in the national economy which could be performed by a man with Plaintiff's residual functional capacity, education, and vocational background. The ALJ decision found Plaintiff capable of engaging in enumerated unskilled, sedentary jobs with a sit or stand option. The Court is satisfied that the ALJ complied with its directive.

█ In finding Plaintiff capable of sedentary jobs with a sit or stand option, the ALJ accepted many of the functional limitations alleged by Plaintiff. However, he rejected Plaintiff's claim that he had two additional functional limitations: 1) a complete inability to bend;[31] and 2) an inability to attend work when the weather was damp or rainy. According to the VE's testimony, either of these functional limitations would render Plaintiff unable to engage in any substantial gainful work in the Philadelphia area.

The VE testified that no jobs would exist if Plaintiff could *never* bend, because although bending is not a *requirement* for any sedentary job, even sedentary jobs might require incidental bending if an employee dropped something on the floor. Plaintiff argues that the ALJ failed to reconcile inconsistent medical opinions as to his inability to bend. Plaintiff relies upon the 1977 opinion of Dr. Stanley Brownstein, who recommended a permanent restriction from bending for Plaintiff.[32] The ALJ rejected this opinion, finding that Dr. Brownstein was not Plaintiff's treating physician, and his opinion was not supported by objective evidence. Instead, the ALJ accepted the 1983 opinion of Dr. Zimmerman, stating that Plaintiff's pain was "worsened by bending... for long periods."[33] Plaintiff put forth no evidence as to his inability to bend within the relevant time period. The ALJ then found that Plaintiff could work at the enumerated sedentary, unskilled jobs, given the incidental nature of any bending Plaintiff would be required to do in a sedentary job. The Court finds that the ALJ's rejection of Dr. Brownstein's opinion and determination that Plaintiff was capable of incidental bending was supported by substantial evidence.

---

**31.** In his motion for summary judgment, Plaintiff claims that the ALJ failed to reconcile inconsistent medical opinions regarding Plaintiff's ability to bend.

**32.** R. at 240.

**33.** R. at 389.

■ The VE also testified that there would be no work Plaintiff could perform in the local economy if he were unable to work, due to increased pain, when it rained, as increased pain due to damp weather would likely cause two or more absences in a month in this region, and those absences would likely result in Plaintiff's termination. Plaintiff argues that the ALJ improperly failed to credit Plaintiff's claims that he would be unable to work in damp weather. Plaintiff points to Dr. Askin's testimony that it is *possible* for a person's pain to worsen during damp weather, as the lower barometric pressure can cause expanded areas of inflammation and involve the nerve endings. However, Plaintiff has put forth no objective evidence showing increased inflammation or any other objective evidence that his pain worsened in rain. Even if the ALJ accepted Plaintiff's complaints of some increase in pain in damp weather, there is no evidence that any increased pain would be so great that he could not attend work in a sedentary job with a sit or stand option. Therefore, the ALJ, having already found that Plaintiff's subjective reports were not credible, could correctly disregard this particular alleged functional limitation and conclude that Plaintiff was able to work in the enumerated sedentary jobs that the VE described. The ALJ's decision is based on substantial evidence.

### E. *Dr. Askin's Testimony*

■ Finally, Plaintiff argues the ALJ incorrectly summarized the testimony of the medical expert at the hearing, regarding the existence of few objective findings to support Plaintiff's claims of back pain, and gave too much weight to the opinion of the testifying medical expert Dr. Askin and too little to the opinion of Dr. Zimmerman regarding Plaintiff's ability to work.

This argument is contradicted by the ALJ's refusal to adopt Dr. Askin's conclusion that Plaintiff was capable of more than sedentary work. Dr. Askin opined that Plaintiff was capable of safely doing medium duty or even heavier work, although doing so would cause him back pain from time to time.[34] Dr. Askin saw no reason why Plaintiff should be restricted to sedentary work based on the objective medical findings,[35] but felt that sedentary work respected even Plaintiff's subjective complaints about pain,[36] and would not be unsafe or uncomfortable.[37] The Court finds that the ALJ deferred to the opinion of Dr. Zimmerman as to Plaintiff's functional limitations (specifically, worsened pain upon bending, lifting, or sitting for long periods of time) and found Plaintiff capable of only sedentary work, contrary to Dr. Askin's opinion.

### V. *CONCLUSION*

Upon review of the record, the Court finds that the ALJ's denial of Plaintiff's 1987 application is supported by substantial evidence. After many years of reviews and remands, the Court is now satisfied that Plaintiff's application has been given a fair and complete review, and that no claim has been left unexplored. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. An appropriate order follows.

### *ORDER*

**AND NOW**, this 17th day of August, 2005, upon consideration of the ALJ's May 24, 2004 decision, the parties' cross-motions for summary judgment, and the record it is hereby **ORDERED** as follows:

---

34. R. at 587.

35. R. at 587.

36. R. at 582.

37. R. at 587.

1. Plaintiff's Motion for Summary Judgment [Doc. # 7] is **DENIED**;

2. Defendant's Motion for Summary Judgment [Doc. # 8] is **GRANTED**;

3. Defendant's final decision regarding Plaintiff's November 17, 1987 application for disability insurance benefits pursuant to Title II of the Social Security Act is **AFFIRMED**;

4. The Clerk of Court is directed to mark this case **CLOSED** for statistical purposes.

It is so **ORDERED**.