**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3684
_____

DAVID JOHN KANAKIS,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-14-cv-01011)
District Judge: Hon. Gustave Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
May 20, 2016
_____

Before: SMITH, HARDIMAN, and SHWARTZ, Circuit Judges.

(Filed:  May 23, 2016)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.


        John Kanakis appeals from the order of the District Court affirming the decision of

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

the Administrative Law Judge ("ALJ") denying his applications for disability insurance benefits ("DIBs") and supplemental social security income ("SSI"). For the reasons set forth herein, we will affirm.

I

Kanakis suffers from chronic back pain and arthritis. He filed applications for DIBs and SSI in February 2013, alleging that pain, stiffness, and mobility problems have prevented him from working since November 7, 2012.[1] At a hearing before the ALJ in May 2014, Kanakis testified that his pain remains at "a four to a six," on a scale of one to ten, so long as he stretches and takes medication, otherwise it "goes up" to "a nine or a ten." R. 48. Kanakis also testified that he spends much of the day in bed and sometimes uses a cane to get around, although he is able to shower, dress himself, drive short distances, shop, and prepare his own meals.

The ALJ also reviewed medical records, including records from Dr. Lawrence Ferlan, Kanakis's primary care physician, Dr. Clifford Vogan, a physician who examined Kanakis on behalf of the Social Security Administration, and Dr. Edward Reidy, an orthopedic specialist. Each recounted Kanakis's medical complaints as well as the results of their respective examinations, which included findings concerning his mobility, reflexes, strength, and range of motion.

Based on Kanakis's testimony and his medical records, the ALJ concluded that

---

[1] Kanakis testified that he injured himself that day while helping a friend move boxes.

2

Kanakis has several severe impairments,[2] including degenerative disc disease of the lumbar spine and chronic back pain. Observing that Kanakis is nonetheless able to "manage his personal needs," R. 17, the ALJ found that Kanakis's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible," R. 19. The ALJ also considered the testimony of a Vocational Expert and found that although Kanakis must have the option to sit or stand at any job due to the pain and stiffness in his back, and can only occasionally be required to climb stairs, balance, stoop, or kneel, he retains the residual functional capacity to perform sedentary work, and is capable of performing several jobs that exist in significant numbers in the national economy, including ticket checker and document preparation clerk.[3] Accordingly, the ALJ determined that Kanakis is not entitled to DIBs or SSI. The District Court affirmed. Kanakis appeals.

## II[4]

We exercise plenary review over the ALJ's determination of legal issues, Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011), and review his factual findings and final determination under the deferential "substantial evidence" standard, 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

---

[2] A "severe impairment" is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520.

[3] The ALJ found that Kanakis could perform sedentary work but not "any past relevant work." R. 21. Kanakis had worked as a cook, construction worker, and truck driver.

[4] The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

3

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Id. (internal quotation marks and citation omitted). If, upon review of the record as a whole, Schaudeck, 181 F.3d at 431, we determine that the ALJ's findings are supported by substantial evidence, we are bound by those findings even if we would have decided the inquiry differently, Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## III

Kanakis argues first that the ALJ's determination that he retains the residual functional capacity to perform sedentary work is not supported by substantial evidence. We disagree. Though Kanakis's pain, stiffness, and mobility problems may be significant, the medical evidence supports the ALJ's conclusion that his symptoms are reasonably manageable and that he remains capable of performing physically undemanding work. For example, Dr. Ferlan indicated that when he examined Kanakis in January 2013, Kanakis responded well to pain medication, was able to "bend[] over fairly well," and exhibited "[n]o evidence of severe pain or spasm." R. 264. Following another examination a few months later, Dr. Ferlan indicated that Kanakis's back continued to improve, due in part to physical therapy, and that Kanakis was feeling "fine." R. 294. Dr. Reidy, who examined Kanakis in January 2014, offered a similar assessment, describing his patient's physical health as "decent overall" and his lumbar range as "pretty good." R. 351, 353. These assessments, together with Kanakis's

4

testimony that he is able to shower, dress himself, drive, go shopping, and perform routine household activities, as well as lift between six and ten pounds, provided substantial evidence for the ALJ's residual functional capacity determination.

Kanakis claims that in assessing his residual functional capacity, the ALJ improperly discounted the medical opinions of Dr. Ferlan, who later completed a disability form indicating that Kanakis's ability to work is limited, and Dr. Vogan, who reached the same conclusion. While Kanakis is correct that the opinions of treating and examining physicians typically deserve significant weight, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "the law is clear that [such] opinion[s] . . . do[] not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361 (internal quotation marks, citation, and alterations omitted). Rather, the ALJ, and "not treating or examining physicians . . . [,] must make the ultimate . . . [residual functional capacity] determinations," id., taking into consideration multiple factors, including the extent to which a medical opinion is consistent with the record as a whole and supported by relevant evidence, see 20 C.F.R. § 404.1527(c)(3)-(4).

Here, the ALJ declined to credit Dr. Ferlan's opinion because it is "clearly inconsistent with his own treatment records," including his report, issued two months before he completed the disability form, indicating that Kanakis's condition was improving and that Kanakis was feeling fine. R. 21. The ALJ declined to credit Dr. Vogan's opinion because it was based primarily on Kanakis's "subjective assertions at the time of the examination" and was inconsistent with Dr. Reidy's assessment that Kanakis is in decent overall health. R. 21. The ALJ fully considered the opinions of Dr.

5

Ferlan and Dr. Vogan, and adequately explained why they are entitled to little weight. For this reason, and because the ALJ's conclusion regarding Kanakis's residual functional capacity is supported by substantial evidence, we will not disturb it.

We turn now to Kanakis's argument regarding the testimony of the Vocational Expert. At the hearing, the ALJ asked the Vocational Expert whether a hypothetical person of Kanakis's age, education, and past work experience who could only occasionally climb stairs, stoop or kneel, and required a "sit/stand at will option," R. 57, could perform any jobs in the national economy. The Vocational Expert indicated that there were several jobs that such a person could perform, including ticket checker and document preparation clerk. The ALJ then asked the Vocational Expert whether the hypothetical person could perform such jobs if the person also needed to miss more than one day of work per month and lie down for three hours each day. According to the Vocational Expert, these additional limitations "would eliminate all work at all exertional levels." R. 58.

Kanakis claims that he has these additional limitations and, to the extent the Vocational Expert testified that a person with such limitations would be unable to find work, the ALJ improperly ignored his testimony in concluding that there are jobs that Kanakis can perform. This argument is unavailing. An ALJ need not accept the testimony of a Vocational Expert unless it is based on a claimant's credibly established limitations. Rutherford, 399 F.3d at 554; see also Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987) ("Inasmuch as the administrative law judge did not have to accept [the claimant's] testimony, he did not have to credit the [vocational expert's] testimony that

6

was predicated upon it."). Here, substantial evidence supports the ALJ's decision not to credit Kanakis's claims regarding the frequency of his need to miss work and lie down, particularly the reports of Dr. Ferlan and Dr. Reidy indicating that Kanakis felt fine and was relatively healthy and Kanakis's testimony about the tasks he regularly performs. Because the ALJ did not err in concluding that the evidence did not support the assertion that Kanakis would need to miss more than one day of work per month and lie down for three hours each day, he did not err in disregarding the testimony of the Vocational Expert related to a hypothetical person with such additional requirements.

Finally, we conclude that the ALJ carefully reviewed the medical evidence and adequately explained, upon consideration of Kanakis's testimony and the reports of multiple physicians, why Kanakis's statements regarding the intensity of his symptoms and physical limitations were not entirely credible. For example, the ALJ pointed out that Kanakis is able to manage his personal needs notwithstanding the alleged severity of his condition, and that both Dr. Ferlan and Dr. Reidy reported that Kanakis maintained a good range of motion, showed improvement with physical therapy, and was in "decent overall" health. R. 19. Because substantial evidence supports the ALJ's credibility determination, we will not disturb it. See Schaudek, 181 F.3d at 433 (noting that an ALJ is permitted to reject a claimant's testimony as incredible, so long as the ALJ provides a basis for doing so supported by the record).

IV

For the foregoing reasons, we will affirm the order of the District Court.