

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-2006

# Snyder Dixon v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2388

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Snyder Dixon v. Comm Social Security" (2006). *2006 Decisions.* Paper 943.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/943

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2388

VICKIE SNYDER DIXON,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

Appellee

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 03-cv-01282
District Judge: Hon. James F. McClure, Jr.

Argued on January 12, 2006

Before: FUENTES, ROTH*, and ROSENN**, <u>Circuit Judges</u>

(Opinion Filed    June 7, 2006  )

*Effective May 31, 2006, Judge Roth assumed senior status.

**This case was submitted to the panel of Judges Fuentes, Roth and Rosenn.
Judge Rosenn died after submissions, but before the filing of the opinion.   The decision
is filed by a quorum of the panel.  28 U.S.C. § 46(d).

Ronald T. Tomasko, Esquire (ARGUED)
Tomasko & Koranda, P.C.
219 State Street
Harrisburg, PA    17101

          Counsel for Appellant


Thomas A. Marino, Esquire
United States Attorney
J. Justin Blewitt, Esquire
Assistant United States Attorney
United States Attorney's Office
Middle District of Pennsylvania
William J. Nealon Federal Building
Suite 311
P. O. Box 309
Scranton, PA    18501-0309

Donna L. Calvert, Esquire
Regional Chief Counsel
Nora R. Koch, Esquire
Supervisory Regional Counsel
Anne von Scheven, Esquire (ARGUED)
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
OGC/Region III
P. O. Box 41777
Philadelphia, PA    19101

          Counsel for Appellee

---

**O P I N I O N**

---

**ROTH**, <u>Circuit Judge</u>:

Vicki Snyder Dixon appeals the decision of the District Court, approving and

adopting the Report and Recommendation of the United States Magistrate Judge, who affirmed the Commissioner of Social Security's conclusion that Dixon is not entitled to Disability Insurance Benefits (DIB). Because we conclude that substantial evidence supports this determination, we will affirm.

## I. Facts

Dixon filed an application for DIB, in which she alleged an inability to engage in substantial gainful activity because of a variety of complaints, including fibromyalgia. Her claim was denied initially, and upon reconsideration, and Dixon requested a hearing. An Administrative Law Judge (ALJ) first denied DIB in 1999, and she appealed in 2001. Dixon's case was initially referred to a Magistrate Judge. The District Judge adopted the Magistrate Judge's Report and Recommendation to remand to the Social Security Administration. On remand, another ALJ denied Dixon DIB and she appealed again. Dixon's case was referred to a second Magistrate Judge. The second District Judge adopted this Magistrate Judge's Report and Recommendation that Dixon's appeal be denied. Dixon appealed and this appeal is now before us.

Dixon was born on August 13, 1954. She has a high school education. She sustained injuries in a motor vehicle accident on March 25, 1997. Before the accident, Dixon was a chiropractic assistant. She has not engaged in any substantial gainful employment activity since the date of the accident.

Directly after the accident, Dixon began receiving chiropractic treatment from her

3

employer, Dr. Janet Calhoun. Dixon reported short-lasting improvements from these treatments. Dr. Calhoun referred Dixon for an MRI of the cervical spine in August 1997, which revealed mild reversal of the normal cervical lordosis with mild ligamentous hypertrophy but no evidence of cervical disc herniation

Dr. Stephen Morgenstein, a physical medicine and rehabilitation specialist, examined Dixon several times, starting in September 1997. Over the course of his care, Dr. Morgenstein made many notations regarding Dixon's condition. In September 1997, he noted that Dixon did not appear to be in any acute discomfort and displayed a full range of motion throughout her cervical spine other than some limitations in extension maneuvers. He also noted that Dixon's x-rays, taken the day of the accident, were within normal limits. In October 1997, he noted that she ambulated with a slowed gait and possessed a very guarded and stiffened posture. He also noted that Dixon's range of motion was markedly limited and noted muscular spasm and tightness throughout Dixon's lower lumbar region in addition to significant bilateral hamstring tightness and bilateral tenderness. Dr. Morganstein stated that he believed that Dixon had sustained myofascial injuries to her lumbar spine and prescribed additional physical therapy exercises and Tylenol. In December 1997, Dr. Morganstein told Dixon that he felt she had post traumatic fibromyalgia and explained that, although this condition is chronic in nature, pain can often be controlled and patients can return to a functional lifestyle.

Dixon attended physical therapy from September 1997 through November 1997.

4

At the time of her discharge, Mark McDonald, P.T., observed that she ambulated fairly normally in the clinic and neurological examination was unremarkable but Dixon continued to experience tenderness and limitations in her range of motion.

In February 1998, a state agency medical consultant completed a Functional Capacity Evaluation, finding that Dixon could perform light work.

At the request of Dixon's attorney, Dixon's treating healthcare providers submitted opinions regarding Dixon's ability to perform substantial gainful employment. Dr. Calhoun stated that Dixon was disabled and should be granted disability and that she would be unable to perform any of the jobs identified by the vocational experts retained by the Commissioner. Dr. Morganstein stated that Dixon was not capable of substantial gainful employment and would, at the particular time the opinion was written, be unable to perform any of the jobs identified by the vocational experts retained by the Commissioner. Willis Willard, M.D., Dixon's treating family physician since 2000, could not recommend any work for Dixon.

## II. Jurisdiction and Standard of Review

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We must review the ALJ's findings of fact to determine whether they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance," and is evidence which "a reasonable mind might accept as adequate to

support a conclusion." *Id.* at 422 (citations omitted). Generally, the substantial evidence standard of review is deferential. *Schaudeck v. Commissioner of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (citations omitted).

**III. Discussion**

In order to bring a claim for DIB, an individual must show that she possess an "inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step process to evaluate whether an individual qualifies for disability benefits. 20 C.F.R. § 404.1520. The Commissioner assesses (1) whether an individual is currently engaged in substantial gainful activity; (2) whether the individual's impairment is severe; (3) whether the individual's impairment meets or equals a listed impairment; (4) the individual's residual functional capacity and their past relevant work; and (5) whether an individual is able to perform other work available in the national economy. 20 C.F.R. § 404.1520(4)(i) - (v). The claimant has the burden of proof on the first four steps and the Commissioner has the burden on step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

A.

Dixon asserts that the ALJ improperly substituted his judgment for the judgment of

6

the treating sources of record. First, Dixon contends that the ALJ improperly relied upon his own visual observations of the plaintiff during her hearing in his determination of the plaintiff's residual functional capacity. An ALJ may not make a credibility determination based solely on his own observations at the hearing. *See Van Horn v. Schweiker*, 717, F.2d 871, 874 (3d Cir. 1983). However, the ALJ did not base his credibility determination solely on his own observations. In his opinion, the ALJ stated that his determination was based on both the medical evidence of record and on his visual observations of Dixon at the hearing. The ALJ's observations merely gave him further opportunity to determine Dixon's credibility regarding her symptoms and limitations. The ALJ then determined that Dixon appeared to have under-reported her ability to engage in daily activities and overstated the severity of her restrictions.

Dixon further asserts that the ALJ did not have sufficient contrary evidence to support an outright rejection of the professional opinions. While an ALJ cannot reject evidence for no reason or for the wrong reason, in this case the ALJ did not reject any evidence and considered the record as a whole. *See Plummer*, 186 F.3d at 429.

Dixon also asserts that the ALJ's opinion should have discussed and given controlling weight to the treating professionals' opinions that Dixon was unable to perform any work. If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [the ALJ] will give it

7

controlling weight. 20 C.F.R. § 404.1527(d)(2). However, opinions on disability are not medical opinions and are not given any special significance. 20 C.F.R. § 404.1527(e)(1) & (3).

The treating professionals' opinions stated that Dixon was disabled and unable to do the specific jobs identified by the vocational expert. Because the opinions reflected the treating professionals' opinions on disability, they were properly afforded no special significance. *See id*. Further, these opinions were properly given less weight because they were unsupported by medical findings regarding what functional limitations Dixon possessed that prevented her from performing these positions. *See* 20 C.F.R. § 404.1527(d)(3). Instead, the treating professionals relied upon the Dixon's subjective complaints. Therefore, the ALJ did not give improper weight to his observations or the treating physicians' opinions.

B.

Dixon also contends that the substantial evidence of record does not support the ALJ's conclusion that Dixon's pain complaints were less than fully credible. Once an ALJ determines that a medical impairment exists, the ALJ must determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999); *see* 20 C.F.R. § 404.1529(c). Because the ALJ determined that Dixon had fibromyalgia, it was properly within his discretion to determine the degree of pain suffered.

The regulations state that symptoms will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Further, while complaints of pain not fully supported by objective medical evidence should be considered and not discounted without contrary medical evidence, they do not have to be credited. *See Chrupcala v. Heckler*, 829 F.3d 1269 (3d Cir. 1987).

In this case, the ALJ considered all of the evidence, including Dixon's complaints of pain, and did not discount any piece of evidence but instead assigned varying weights to it. The medical evidence provided that Dixon exhibited normal physical findings and that there existed no muscle atrophy suggesting an inability to perform sedentary work. Also, Dr. Willard stated that he could not assess whether Dixon was capable of any sustained work without a Functional Assessment Evaluation. Dr. Morganstein stated that with the proper pain management program, the plaintiff would be able to return to work. In viewing the objective medical evidence presented, the ALJ stated that the evidence did not justify the severity of the limitation Dixon alleged but instead supported a conclusion that her impairments resulted in only modest limitations.

As discussed above, the ALJ was not required to give force to the opinions of Dixon's treating physicians insofar as they were conclusory opinions, unsupported by medical evidence. The ALJ considered the record as a whole, including Dixon's

9

subjective complaints and the treating professionals' opinions, in making his credibility determination. His determination was supported by substantial evidence.

## C.

Dixon asserts that the Commissioner has not met her burden of proving that Dixon is able to perform other work because the determination that Dixon could perform some sedentary work was entirely reliant on the hypothetical question posed by the ALJ to the vocational expert (VE) regarding Dixon's functional capacities. In order to meet the burden of establishing that jobs are available in the national economy that a claimant with impairments can perform, a Commissioner must present the testimony of a VE or other similar evidence. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). Further, the VE's testimony may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments as contained in the record. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

The third hypothetical that the ALJ posed to the VE reflected Dixon's age, education, diagnoses, treatment history, official exertional limits, the persistent, significant pain, and the attacks of high-level pain about which Dixon testified. Based on the ALJ's hypothetical, which accurately reflected Dixon's impairments, the VE identified the available jobs Dixon could perform: surveillance system monitor, machine tender, and information clerk. Therefore, at step five, the Commissioner met her burden of demonstrating the existence of jobs which Dixon could perform given the residual

10

functional capacity which had been established.

**IV. Conclusion**

For the foregoing reasons we conclude that the ALJ's determinations were supported by substantial evidence. We will, therefore, affirm the judgment of the District Court.